1  JAMES R. EVANS (State Bar No. 119712)
   **ALSTON & BIRD LLP**
2  333 South Hope Street, 16th Floor
   Los Angeles, CA 90071-1410
3  Telephone:   213-576-1000
   Facsimile:   213-576-1100
4  E-mail:       james.evans@alston.com
   Attorneys for Defendant
5  HOME DEPOT U.S.A., INC.,
   A Delaware corporation (erroneously sued as HOME DEPOT)
6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10  JEANINE RANDALL, individually, and     | Case No.
    as successor in interest to SONIA HUEY  |
11                                          | **DECLARATION OF JAMES R.**
                 Plaintiff,                 | **EVANS IN SUPPORT OF NOTICE OF**
12                                          | **REMOVAL BY HOME DEPOT USA,**
          v.                                | **INC., A DELAWARE**
13                                          | **CORPORATION**
    HOME DEPOT,                             |
14                                          | [Filed concurrently with Notice of
                 Defendant.                 | Removal; Civil Cover Sheet; Corporate
15                                          | Disclosure Statement; and Certificate of
                                            | Service]
16

17

18

19

20

21

22

23

24

25

26

27

28
                              - 1 -
       DECLARATION OF JAMES R. EVANS IN SUPPORT OF NOTICE OF
                              REMOVAL

### DECLARATION OF JAMES R. EVANS

I, James R. Evans, declare and state:

1.     I am an individual over the age of eighteen years, and have personal knowledge of the facts contained in this declaration.  If called as a witness, I could and would testify truthfully and competently to those facts.  I make this Declaration in support of the Notice of Removal filed by Defendant Home Depot U.S.A., Inc., erroneously named as "Home Depot" ("Defendant").

2.     I am an attorney licensed to practice law before all courts of the State of California.  I am also admitted to practice before the United States Supreme Court, the United States Court of Appeals for the Ninth Circuit, and the United States District Courts for the Northern, Eastern and Southern Districts of California.  I am a partner of Alston & Bird LLP, attorneys of record for Defendant.

3.     Attached hereto as Exhibit A is a true and correct copy of the Summons and Complaint, and all other process, pleadings, and orders previously filed in the matter entitled *Jeanine Randall v. Home Depot*, Case No. S-CV-0049813 (the "State Court Action") that is currently pending in the Superior Court of the State of California, County of Placer**.**

4.     Attached hereto as Exhibit B is a true and correct copy of the proof of service demonstrating that Defendant was served on February 10, 2023, with the Summons and Complaint in the State Court Action.

5.     I have served Defendant as one of its attorneys for the past three years and provided legal advice on a number of issues.  By reason of my work for Defendant, I have become familiar with the location of Defendant's corporate headquarters and its place of incorporation.  Defendant is a Delaware corporation with its corporate headquarters located at 2455 Paces Ferry Rd SE, Atlanta, Georgia, 30339.  It is from that location that Defendant's high-level officers direct, control and coordinate Defendant's activities on a day-to-day basis.

6.     Attached hereto as Exhibit C is a true and correct copy of the Delaware Secretary of State's Certificate of Good Standing for Home Depot U.S.A., Inc., further demonstrating that Defendant is a Delaware corporation.

7.     Attached hereto as Exhibit D is a true and correct copy of the Entity Details for Home Depot U.S.A., Inc., that are publicly available on the Official Website of the State of Delaware at https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx .  Those Entity Details show that Defendant is a Delaware corporation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 13th day of March, 2023 at Los Angeles, California.

_/s/ James R. Evans_____
James R. Evans

- 3 -
DECLARATION OF JAMES R. EVANS IN SUPPORT OF NOTICE OF REMOVAL

# EXHIBIT A

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of Placer
01/27/2023 at 11:37:01 AM
By: Karlee M Parsons
Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
HOME DEPOT, and DOES 1 through 50, inclusive, Defendants.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JEANINE RANDALL, individually, and as successor in interest to
SONIA HUEY, PLAINTIFF.

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
HON. HOWARD G. GIBSON COURTHOUSE

10820 Justice Center Drive
Rolesville, California 95678

**CASE NUMBER:**
*(Número del Caso):*
S-CV-0049813

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
V. James DeSimone, Esq.:13160 Mindanao Way, Suite 280, Marina del Rey, California 90292; 310.693.5561

DATE: Friday, January 27, 2023
*(Fecha)*

Clerk, by **Karlee M Parsons**, Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100  [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

**V. JAMES DESIMONE LAW**
V. James DeSimone (SBN: 119668)
vjamesdesimone@gmail.com
Carmen D. Sabater (SBN: 303546)
Cds820@gmail.com
13160 Mindanao Way, Suite 280
Marina del Rey, California 90292
Telephone: 310.693.5561
Facsimile: 323.544.6880
VJD000141@bohmlaw.com

Attorneys for PLAINTIFF,
JEANINE RANDALL

**ELECTRONICALLY FILED**
Superior Court of California,
County of Placer
01/27/2023 at 11:37:01 AM
By: Karlee M Parsons
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF PLACER

| | |
|---|---|
| JEANINE RANDALL, individually, and as successor in interest to SONIA HUEY<br><br>   PLAINTIFF,<br><br>  v.<br><br>HOME DEPOT, and DOES 1 through 50, inclusive,<br><br>   Defendants. | Case No.: S-CV-0049813<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES:**<br><br>1. DISABILITY DISCRIMINATION (Cal. Gov't Code §§12940 et seq)<br>2. FAILURE TO PROVIDE REASONABLE ACCOMMODATION (Cal. Gov't Code §§12940 et seq)<br>3. FAILURE TO ENGAGE IN A GOOD FAITH INTERACTIVE PROCESS (Cal. Gov't Code §§12940 et seq)<br>4. FAILURE TO PREVENT DISCRIMINATION (Cal. Gov't Code §§12940 et seq)<br>5. ADVERSE EMPLOYMENT ACTION IN VIOLATION OF PUBLIC POLICY<br>6. PREMISES LIABILITY BASED ON FEHA VIOLATIONS<br>7. WRONGFUL DEATH BASED ON FEHA VIOLATIONS (Cal. Civ. Proc. Code § 377.60)<br>8. NEGLIGENCE RESULTING IN PAIN, SUFFERING, AND PHYSICAL INJURY<br>9. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS<br><br>**DEMAND FOR JURY TRIAL** |

**PLAINTIFF'S COMPLAINT FOR DAMAGES**
*JEANINE RANDALL v. HOME DEPOT, et al.*          V. James DeSimone, Esq.
Case No.:                   Carmen D. Sabater, Esq.

## CASE SUMMARY

1. This action arises out of the wrongful death of SONIA HUEY ("Ms. Huey") as a result of DEFENDANT HOME DEPOT (hereinafter "HOME DEPOT") and DOES 1-50's knowing, willful, and flagrant violations of the public health orders and public health guidance in place in December 2020 to slow the spread of COVID-19 and protect human life.

2. In 2020 Ms. Huey worked at the HOME DEPOT store in Auburn, California. She worked in a small windowless office, approximately six feet by twelve feet, which she shared with another employee.

3. In 2020, Ms. Huey lived with her daughter, PLAINTIFF JEANINE RANDALL (hereinafter "MS. RANDALL" or "PLAINTIFF"), and PLAINTIFF RANDALL's two young sons, Kenyon and Messia, and, until October 2020, teenage daughter Nafessa (also known as Anna). Ms. Huey was the sole breadwinner for the household because PLAINTIFF RANDALL struggled with a number of disabilities, including uncontrolled diabetes and emphysema, and was unable to work.

4. Ms. Huey had health conditions that put her at high risk for death or serious illness from COVID-19. In particular, she had diabetes, Chronic Obstructive Pulmonary Disease ("COPD"), heart disease, and morbid obesity. HOME DEPOT was aware of her health conditions and, because of her breathing problems, had permitted Ms. Huey to park closer to the entrance to the store. Indeed, Ms. Huey provided HOME DEPOT with medical notes establishing that she was at high risk for COVID-19 in the Spring of 2020. Additionally, even before March 2020, there had been one incident in which she had to leave work early because her blood insulin dropped dangerously low.

5. Ms. Huey repeatedly requested disability accommodations after the start of the COVID-19 pandemic. Although Home Depot initially gave Ms. Huey a period of paid leave in March 2020 when the pandemic started, when it became clear that the pandemic was not going to last two to three weeks, Home Depot required Ms. Huey to return to work.

///

///

2

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*JEANINE RANDALL v. HOME DEPOT, et al.*                    V. James DeSimone, Esq.
Case No.:                                                  Carmen D. Sabater, Esq.

6.      On April 1, 2020, Ms. Huey provided Home Depot Human Resources (at that time, run by an employee named Mark) with a letter from her doctor stating that she was "high risk" because she had "serious chronic medical conditions per CDC guidelines."

7.      Because she was high risk, Ms. Huey repeatedly requested accommodations for her disabilities, including compliance with public health guidance and occupational safety standards intended to limit the spread of COVID-19. She made these requests to Larry Snyder, Tawny Gonzales, and her direct manager, April.

8.      However, despite numerous reasonable accommodation requests from Ms. Huey, during the COVID-19 pandemic, HOME DEPOT refused to allow Ms. Huey to work remotely and completely failed to implement basic COVID-19 safety measures such as social distancing, mask-wearing, and screening employees for symptoms. Ms. Huey's granddaughter worked in the Auburn Home Depot during this period and recalls seeing April tell employees that they needed a mask somewhere near the face so that Home Depot would not get fined, but never actually required employees to wear their masks over their nose and mouth at all times.

9.      Thus, in the first week of December 2020, Ms. Huey was training an employee, Taylor, who had not finished her two-week quarantine, was still coughing due to COVID-19 and was not wearing a mask.

10.     HOME DEPOT permitted Taylor to return to work before her quarantine was officially over, and despite the fact that Taylor was still symptomatic at the time, to receive training from Ms. Huey, whom they knew was at high risk for COVID-19.

11.     As a result, on or around December 8, 2020, Ms. Huey developed symptoms consistent with COVID-19. Although she stayed home, she continued to perform her work from home through December 9, 2020, underscoring her ability to work from home and the appropriateness of her accommodation requests. On December 10, 2020, Ms. Huey went to Sutter Health Hospital to get tested for COVID-19. Her test was positive. Ms. Huey promptly alerted HOME DEPOT to her positive test result but was told "not to tell anyone."

12.     PLAINTIFF RANDALL did her best to isolate Ms. Huey in the home after learning of her positive test, but the damage had already been done. Despite her best efforts, on

3

**PLAINTIFF'S COMPLAINT FOR DAMAGES**
*JEANINE RANDALL v. HOME DEPOT, et al.*                                    V. James DeSimone, Esq.
Case No.:                                      8                           Carmen D. Sabater, Esq.

1  or around the following day, December 11, 2020, Ms. Huey's grandson, Kenyon, who was 12

2  years old, became ill with symptoms of COVID-19.

3       13.     Then, on or around December 12, 2020, PLAINTIFF RANDALL developed

4  symptoms of COVID-19. On the same day, Ms. Huey's oxygen levels plummeted, prompting her

5  to take an ambulance to the Kaiser Permanente Hospital in Roseville.

6       14.     By December 21, 2020, Ms. Huey was intubated. Then, she went into a coma. She

7  remained in a coma for approximately one month.

8       15.     After shortly waking up from the coma, on February 1, 2020, while undergoing a

9  lung biopsy, Ms. Huey passed away and could not be resuscitated. "Pneumonia due to coronavirus

10  2019" and hypoxic respiratory failure are listed as causes of death on Ms. Huey's death certificate.

11       16.     PLAINTIFF RANDALL continues to struggle with the long-term health effects of

12  her own bout with COVID-19 because of contracting "take home" COVID as a result of

13  DEFENDANT HOME DEPOT's unlawful conduct. For approximately one year, PLAINTIFF

14  RANDALL had an altered sense of smell. She developed extreme fatigue, which lingers to this

15  day, along with brain fog, intermittent joint pain, frequent bouts of shortness of breath, and

16  difficulty with her short-term memory. These conditions prevent PLAINTIFF RANDALL from

17  doing what she needs to do to take care of her home and her kids, like cooking and cleaning. In

18  addition, she has developed a phobia of leaving the house. She is afraid of getting sick and dying.

19       17.     In Ms. Huey's Workers' Compensation case, a Qualified Medical Examiner found

20  that there was "compelling" evidence that Ms. Huey's death from COVID-19 was caused by

21  workplace exposure.

22       18.     Based on the foregoing, PLAINTIFF RANDALL, as Ms. Huey's successor in

23  interest, asserts violations of the Fair Employment & Housing Act, including disability

24  discrimination, failure to accommodate, failure to engage in a good faith interactive process

25  regarding requests for accommodation, failure to prevent discrimination, and tort claims based on

26  HOME DEPOT's violations of the Fair Employment & Housing Act, including wrongful death

27  and premises liability. Additionally, PLAINTIFF RANDALL sues HOME DEPOT for

28  negligence and negligent infliction of emotional distress resulting in her own physical injury and

4

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*JEANINE RANDALL v. HOME DEPOT, et al.*                         V. James DeSimone, Esq.

Case No.:                                        Carmen D. Sabater, Esq.

emotional distress relating to her own infection with COVID-19 and long-haul COVID.

**PARTIES AND JURISDICTION**

19.     This Complaint is brought by PLAINTIFF JEANINE RANDALL, individually and as the heir and successor in interest of her mother, SONIA HUEY.

20.     At all relevant times to this Complaint, PLAINTIFF RANDALL is and has been an individual residing in the home she shared with decedent, Ms. Huey, in Placer County.

21.     At all times relevant to this Complaint, DEFENDANT HOME DEPOT is and was at all times herein mentioned, a business entity doing business in Placer County, California, where the events at issue in this action occurred. In doing the acts herein alleged, its employees, including their supervisors and managers, acted within the course and scope of their employment with HOME DEPOT, engaged in the acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of its employees and is vicariously liable for the wrongful conduct of its employees.

22.     PLAINTIFF is informed and believes, and thereon alleges, that at all relevant times, HOME DEPOT, through its supervisory personnel, extended control over the day-to-day operations at the Auburn store where Ms. Huey was employed.

23.     PLAINTIFF is informed and believes, and thereon alleges, that at all relevant times, DOES 1-50 were duly authorized HOME DEPOT employees and agents, acting within the course and scope of their employment. The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of DEFENDANTS DOES 1 to 50, inclusive, are unknown to PLAINTIFF at this time, who therefore sues said DEFENDANTS by such fictitious names. PLAINTIFF will amend this Complaint to show the true names, capacities, and/or relationships when the same have been ascertained.

24.     PLAINTIFF alleges all or some of said fictitiously-named DEFENDANTS were the principals, agents, joint ventures, partners, co-conspirators, employers, employees, contractors, predecessors in interest and/or successors in interest to said DEFENDANTS, and are responsible for the injuries and damages sustained by PLAINTIFF, as more fully set forth below, and are residents of the State of California, are doing business in California and/or committed acts

5

1  pursuant to which they are under the jurisdiction of the State of California, and/or partners of each

2  and the other and as such are either joint tortfeasors and/or jointly and severally liable and legally

3  responsible in some manner for the events and happenings herein, and proximately caused the

4  injuries and damages to PLAINTIFF as set forth herein.

5       25.    At all times herein mentioned, each of the DEFENDANTS was an agent, servant,

6  partner, aider and abettor, co-conspirator and/or joint venture of each of the other DEFENDANTS

7  herein and were at all times operating and acting within the purpose and scope of said agency,

8  service, employment, partnership, conspiracy and/or joint venture and rendered substantial

9  assistance and encouragement to the other DEFENDANTS, knowing that their conduct

10  constituted a breach of duty owed to PLAINTIFF.

11      26.    PLAINTIFF has complied with all applicable claims and statutes under the law of

12  the state of California, including Section 395(a) of the California Code of Civil Procedure and

13  Government Code 12960(d).

14      27.    This is the Court of proper jurisdiction because the subject matter of this litigation

15  and some or all the alleged torts and facts, conduct, breaches and/or omissions alleged in this

16  Complaint occurred, transpired, or were otherwise entered into in the County of Placer, State of

17  California.

18               **FACTS PERTINENT TO ALL CAUSES OF ACTION**

19      28.    On March 13, 2020, Ms. Huey was 51 years old. Shortly afterward, Ms. Huey

20  turned 52. Ms. Huey worked at the HOME DEPOT store in Auburn, California, and lived with

21  her daughter, PLAINTIFF RANDALL, and PLAINTIFF RANDALL's two young sons, Kenyon

22  and Messia, and, until October 2020, teenage daughter Nafessa (also known as Anna).

23      29.    PLAINTIFF RANDALL struggled with mental illness, uncontrolled diabetes, and

24  emphysema and was unable to work. She has been receiving Social Security disability benefits

25  since 2015. Ms. Huey was the primary breadwinner for Jeannine and her children, including

26  Nafessa, and owned and paid for the sole car available to the family.

27      30.    Nafessa also worked at the HOME DEPOT store in Auburn, California, and

28  observed what happened in that store from 2020 to 2021.

**PLAINTIFF'S COMPLAINT FOR DAMAGES**
*JEANINE RANDALL v. HOME DEPOT, et al.*                                    V. James DeSimone, Esq.
Case No.:                                                                  Carmen D. Sabater, Esq.

31.     Ms. Huey had health conditions that put her at high risk for death or serious illness from COVID-19. In particular, she had diabetes, Chronic Obstructive Pulmonary Disease ("COPD"), heart disease, and morbid obesity. HOME DEPOT was aware of her health conditions and, because of her breathing problems, had permitted Ms. Huey to park closer to the entrance to the store.

32.     Additionally, prior to March 2020, there had been one incident in which she had to leave work early because her blood insulin dropped dangerously low. However, Ms. Huey felt that HOME DEPOT was like a big family, which she liked.

33.     Ms. Huey had worked at the Auburn California store since 2015. Working at HOME DEPOT – and taking care of her daughter and grandchildren – was her life.

34.     At the Auburn location, Ms. Huey was a Customer Order Specialist ("COS"). She put in large orders for contractors and was the middleman between customers and vendors. Her work was exclusively over the phone and the computer and could easily have been performed from home.

35.     Ms. Huey's office at the Auburn location was a small windowless room approximately six feet by twelve feet. The room had no ventilation, and she shared it with another employee, Aubree Anderson.

36.     In March 2020, when the COVID-19 pandemic closed down schools and stores nationwide, HOME DEPOT gave Ms. Huey a period of paid leave because of her disabilities.

37.     On March 19, 2020, California Governor Gavin Newsom issued Executive Order N-33-20 directing all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors in order to slow the rapid spread of COVID-19 within California.

38.     On April 1, 2020, Ms. Huey sent HOME DEPOT management, including Larry Snyder—the store manager for the HOME DEPOT stores in the Sacramento California market (Auburn, Placerville, Rancho Cordova, Folsom, and Carmicheal)—and Mark in Human Resources a letter from her doctor stating that she was "high risk" because she had "serious chronic medical conditions as per CDC guidelines."

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*JEANINE RANDALL v. HOME DEPOT, et al.*     V. James DeSimone, Esq.
Case No.:                                  Carmen D. Sabater, Esq.

39.     Because she was high risk, Ms. Huey repeatedly requested disability accommodations, including compliance with public health guidance designed to limit the spread of COVID-19. She made most of her requests to Larry Snyder, the store manager for the HOME DEPOT stores in the Sacramento California market (including Auburn), Tawny Gonzales in Human Resources, and her direct manager, April.

40.     Ms. Huey asked to be able to work from home because her work was done over the computer and telephone. She stated, "If I get this virus, I will die." But Larry Snyder and Tawny Gonzales refused her request.

41.     Ms. Huey also told Tawny Gonzales in HR about PLAINTIFF RANDALL's risk of severe COVID-19, due to PLAINTIFF RANDALL's diabetes.

42.     Ms. Huey also complained about individuals not wearing masks or not wearing masks that fully covered both their noses and mouths.

43.     On June 17, 2020, Ms. Huey reported to Tawny Gonzales in Human Resources that she was working with a trainee who was not wearing a mask, sneezing, and blowing her nose.

44.     "Would it be wrong to tell the guy in training in here to put on a mask," she asked, "would it be wrong?" Ms. Gonzales did not respond to her question.

45.     Ms. Huey repeatedly asked Larry Snyder and Tawny Gonzales to enforce the mask mandate, but they refused.

46.     Even her direct manager, April, frequently did not wear a mask covering both her nose and mouth.

47.     Ms. Huey's granddaughter, who was also an employee at the Auburn location, recalls seeing April frequently wearing her mask below her nose.

48.     Ms. Huey's granddaughter also recalls seeing April tell employees who were not wearing a mask that they needed a mask somewhere near their face so that HOME DEPOT would not get fined—but never requiring employees to actually wear their masks over their nose and mouth at all times.

49.     On June 18, 2020, Governor Gavin Newsom ordered all Californians to wear face coverings in public places and at work, with few exceptions.

8

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*JEANINE RANDALL v. HOME DEPOT, et al.*                                          V. James DeSimone, Esq.
Case No.:                                                                         Carmen D. Sabater, Esq.

50.     A few months later, in September 2020, Governor Newsom signed into law AB 685 (later amended in 2021 via AB 654), which required employers to provide written notice to employees who may have been exposed to COVID-19 within one day of receiving notification of the potential exposure. The law authorized the California Division of Occupational Safety and Health ("Cal/OSHA") "when, in its opinion, a place of employment, operation, or process, or any part thereof, exposes workers to the risk of infection with severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2, also known as COVID-19), so as to constitute an imminent hazard to employees, to prohibit the performance of that operation or process, or entry into that place of employment." The law applied to public and private employers alike, with some exceptions for certain healthcare and social service facilities.

51.     After public health guidance made plain that gaiters did not adequately protect against COVID-19, Ms. Huey asked management why it was still permitting people to wear gaiters.

52.     Ms. Huey also complained about HOME DEPOT managers hosting large parties outside of work for HOME DEPOT employees, where employees drank alcohol and mingled indoors without wearing masks.

53.     These parties frequently resulted in COVID-19 outbreaks among employees in the Auburn store, and yet Ms. Huey's colleagues continued to host these parties even when stay-at-home orders were in effect.

54.     Ms. Huey's granddaughter, Nafessa Martin, recalls attending an indoor mask-less Christmas party thrown by her department head, Lena Young, with numerous other HOME DEPOT employees a week or so before Ms. Huey developed symptoms.

55.     Meanwhile, Ms. Huey was terrified to do any socializing.

56.     After her granddaughter, Nafessa, moved out of the home in or around October 2020, Ms. Huey banned Nafessa and her new husband from visiting her at home because she did not feel that they adequately followed COVID-19 safety precautions. She had all her food delivered to her at home.

///

9

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*JEANINE RANDALL v. HOME DEPOT, et al.*
Case No.:

V. James DeSimone, Esq.
Carmen D. Sabater, Esq.

14

57.     Even before the pandemic, Ms. Huey had become a homebody—limiting her life to her work and her family.

58.     But after the start of the COVID-19 pandemic, Ms. Huey became meticulous about avoiding any outing that she believed could result in her death.

59.     Ms. Huey told her daughter, PLAINTIFF RANDALL, that she dreaded even having to use the bathroom at work because there was no limit on how many people could be in there at one time.

60.     On November 6, 2020, Placer County released a COVID-19 Update noting that "cases rose in October after a decrease in September." The Update further noted that "For a recent one-month period (Sept. 15 through Oct. 15), the most common occupations of cases were clerical, office, and sales workers who comprised 13% of cases."

61.     On November 16, 2020, as coronavirus cases continue to rise across the state, Newsom ordered almost all nonessential businesses to close and that Californians must wear a mask whenever outside their home.

62.     On November 19, 2020, citing "an unprecedented rate of rise in increase in COVID-19 cases across California," the State of California issued a second, albeit more limited, stay-at-home order to take effect on November 21, 2020. "We are sounding the alarm," Newsom said in a statement. "It is crucial that we act to decrease transmission and slow hospitalizations before the death count surges. We've done it before and we must do it again."

63.     On December 3, 2020, the State of California issued a Regional Stay at Home Order based on the alarming increase in COVID-19 case rates and plummeting Intensive Care Unit (ICU) capacity in Southern California specifically. The Order required Southern Californians to stay home as much as possible, closed operations for certain sectors, and required 100 percent masking and physical distancing in sectors that remained open.

64.     On December 4, 2020, Placer County released a COVID-19 Update noting that "Hospitalizations in the three Placer County hospitals were almost 5 times as high at the end of November compared to the beginning of the Month." The Update further stated that "COVID-19 hospitalizations are now nearly double what they were at the peak of the summer surge, and are

10

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*JEANINE RANDALL v. HOME DEPOT, et al.*                                    V. James DeSimone, Esq.
Case No.:                                                                  Carmen D. Sabater, Esq.

1    now taking up more than 15% of total hospital bed capacity. This is concerning, especially going

2    into the winter season when hospital admissions tend to peak."

3         65.      By December 10, 2020, Placer County was subject to a regional stay at home order

4    due to ICU bed capacity falling below 15%.

5         66.      In the first week of December 2020, Ms. Huey was training an employee, Taylor,

6    inside Ms. Huey's small office.

7         67.      Taylor told HOME DEPOT employees at the time that she had tested positive and

8    been out of work, but Taylor did not stay out of work for the full two weeks. HOME DEPOT

9    permitted Taylor to return to work before she completed the quarantine period—and while she

10    was still coughing.

11         68.      Even more significantly, Taylor, like so many HOME DEPOT employees at the

12    Auburn store, did not wear a mask over her nose or mouth. Instead, her mask was often dangling

13    from one of her ears.

14         69.      Despite being aware that Taylor could possibly still be contagious for COVID-19,

15    HOME DEPOT permitted Taylor to return to work and receive training from Ms. Huey, whom

16    they knew was at high risk for COVID-19.

17         70.      In Ms. Huey's Workers' Compensation case, a Qualified Medical Examiner found

18    that there was "compelling" evidence that Ms. Huey's death from COVID-19 was caused by

19    workplace exposure.

20         71.      On or around December 8, 2020, Ms. Huey developed symptoms consistent with

21    COVID-19. Although she stayed home, she continued to perform her work from home through

22    December 9, 2020, underscoring the appropriateness of her requests to work remotely as an

23    accommodation for disabilities.

24         72.      On December 10, 2020, Ms. Huey went to Sutter Health Hospital to get tested for

25    COVID-19. Her test was positive, but hospital personnel informed her that she should remain at

26    home and monitor her oxygen levels.

27         73.      Within one hour of getting the test results, Ms. Huey texted Tawny Gonzales in

28    the HOME DEPOT Human Resources Department to inform her that she had tested positive for

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*JEANINE RANDALL v. HOME DEPOT, et al.*                          V. James DeSimone, Esq.

Case No.:                                           Carmen D. Sabater, Esq.

COVID-19. "Shit are you ok?" Ms. Gonzales responded, and Ms. Huey stated, "I am really fucking sick. They are sending me home with an oxygen finger thing." Ms. Huey was given an oximeter to monitor her oxygen levels.

74.     HOME DEPOT staff then informed Ms. Huey in a phone call "not to tell anyone" that she had tested positive for COVID-19.

75.     "Omg they are telling me not to tell anyone," Ms. Huey texted her colleague, Aubree, "Don't tell them I told you." "I thought they had to tell everyone who was near you?" Aubree responded. "I guess not," Ms. Huey wrote.

76.     That same day, Ms. Huey's daughter, MS. RANDALL, posted about Ms. Huey's test results on Facebook. Ms. Huey's colleague, Rachel King, saw the post and texted Ms. Huey to find out if she had COVID. In response to these revelations, Ms. Gonzales in Human Resources asked Ms. Huey if MS. RANDALL could take down the post.

77.     Ms. Huey lived with PLAINTIFF RANDALL and RANDALL's son, Kenyon, who was 12 years old in December 2020. Ms. Huey and PLAINTIFF RANDALL tried to isolate Ms. Huey from the rest of the household after she received the positive COVID test, but the damage had already been done. On or around December 11, 2020, Kenyon became ill with symptoms of COVID-19.

78.     Prior to Ms. Huey contracting COVID-19, Kenyon had shared a room with her in the family's two-bedroom apartment. After he developed COVID-19, he moved back into that shared room to isolate himself from his mother (MS. RANDALL) and brother, Messia.

79.     On December 12, 2020, PLAINTIFF RANDALL developed symptoms of COVID-19—and Ms. Huey's oxygen levels plummeted. Struggling to breathe, Ms. Huey was brought by ambulance to the Kaiser Permanente in Roseville.

80.     In a December 12, 2020, text message to Ms. Gonzales in the Human Resources Department, Ms. Huey wrote, "I may end up on a ventilator for a little bit . . . I have what they are calling COVID pneumonia . . . They are having a hard time keeping my oxygen level high enough." She asked Ms. Gonzales to make sure that she was paid, writing, "my daughter has to have money in case I'm in here a while so I need to know."

**PLAINTIFF'S COMPLAINT FOR DAMAGES**
*JEANINE RANDALL v. HOME DEPOT, et al.*                    V. James DeSimone, Esq.
Case No.:                                                  Carmen D. Sabater, Esq.

81. Two days later, on December 14, 2020, Ms. Huey texted Ms. Gonzales and asked if she had told everyone. Ms. Gonzales responded, "I only told Larry [Snyder]." Ms. Huey stated that she was "in really bad shape."

82. By December 21, 2020, Ms. Huey was intubated, and not long afterward, Ms. Huey went into a coma. She remained in a coma for approximately one month.

83. On or around January 27, 2020, Ms. Huey woke from her coma. Her family hoped that the worst was over and she might one day be discharged from the hospital.

84. However, Ms. Huey's doctors were concerned that her lungs were not healing properly, and they scheduled a lung biopsy.

85. In her few days of consciousness after waking up from the coma before undergoing the lung biopsy, Ms. Huey communicated with her daughter in writing—because she was unable to speak. Her written words showed that she was suffering and terrified of dying.

86. On February 1, 2021, due to COVID complications, while undergoing the lung biopsy, Ms. Huey passed away and could not be resuscitated. Her death certificate lists her cause of death as pneumonia due to coronavirus disease-2019, hypoxic respiratory failure, pulmonary embolism, and right ventricular failure.

87. During Ms. Huey's December 2020 hospitalization, HOME DEPOT sent out a packet—dated November 30, 2020—titled HOME DEPOT COVID Prevention Protocol to the employees in its Auburn location. The packet stated that anyone who can do their job from home will do their job from home — the very accommodation that Ms. Huey had repeatedly requested but been denied by Snyder and Gonzales.

88. The packet also articulated numerous other precautions that Ms. Huey had requested on multiple occasions but had been refused. For example, after Ms. Huey's hospitalization, HOME DEPOT posted a sign on Ms. Huey's office door stating that no more than two people were allowed in the room. This was another accommodation that Ms. Huey had repeatedly requested when she was working in that office because other employees frequently came into her office to use the phone.

///

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*JEANINE RANDALL v. HOME DEPOT, et al.*                          V. James DeSimone, Esq.
Case No.:                                                        Carmen D. Sabater, Esq.

89.     PLAINTIFF RANDALL continues to struggle with the long-term health effects of her own bout with COVID-19 because of contracting "take-home" COVID as a result of HOME DEPOT's unlawful conduct. For approximately one year, PLAINTIFF RANDALL had an altered sense of smell. She developed extreme fatigue, which lingers to this day, along with intermittent joint pain, frequent bouts of shortness of breath, brain fog, and difficulty with her short-term memory. Though some days are better than others, MS. RANDALL struggles with joint pain that she did not have prior to contracting COVID-19 and more frequent bouts of shortness of breath. These conditions prevent MS. RANDALL from doing the things that she needs to do to take care of her home and her kids, like cooking and cleaning.

90.     In addition, PLAINTIFF RANDALL developed a phobia of leaving the house. She is afraid of getting sick and dying. PLAINTIFF RANDALL has reported many of these symptoms to her primary care physician, whom she regularly sees due to her uncontrolled diabetes. Additionally, not long after recovering from COVID-19, she developed high blood pressure that is increasingly concerning to her doctor and suffered a first-degree heart blockage, all of which is likely linked to her bout with COVID-19—given her underlying conditions.

91.     Indeed, a study published in Nature Medicine in February 2022 concluded that the risk of strokes and heart problems in the first year after recovering from a COVID-19 infection is "substantial," and those problems include coronary disease, heart failure, heart attacks, and a 52% increased risk of stroke.

92.     MS. RANDALL's son, Kenyon, who also contracted "take-home" COVID-19 from Ms. Huey, developed intense behavioral problems, as though his entire personality had changed. Kenyon, who had never had any notable behavioral issues prior to contracting COVID-19, ended up getting expelled from school and recently started working with a behavioralist through the County. Researchers have identified mood changes, anxiety, depression, and even psychosis as long COVID symptoms.

///

///

///

14

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*JEANINE RANDALL v. HOME DEPOT, et al.*                    V. James DeSimone, Esq.
Case No.:                                                   Carmen D. Sabater, Esq.

**FIRST CAUSE OF ACTION**

**DISABILITY DISCRIMINATION, VIOLATION OF §§12940 ET SEQ**

**(PLAINTIFF as Successor in Interest Against DEFENDANT HOME DEPOT)**

93.     PLAINTIFF re-alleges the information set forth in the preceding paragraphs and incorporates it into her cause of action as if it was fully alleged herein.

94.     At all times relevant to the matter, the Fair Employment and Housing Act and Government Code section 12940 were in full force and effect and binding on DEFENDANT. Government Code section 12940, subdivision (a), reads: "It is an unlawful employment practice... [f]or an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, or sexual orientation of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

95.     Ms. Huey suffered from a "physical disability," as defined by Government Code section 12926, subdivision (k). In spite of her disability, Ms. Huey was able to perform the essential functions of her position as defined by Government Code section 12926, subdivision (f), and California Code of Regulations, title 2, section 11065, subdivision (e), and was otherwise able to perform her job had DEFENDANT HOME DEPOT provided the reasonable accommodation required by Government Code section 12926, subdivision (p), and California Code of Regulations, title 2, section 11068, subdivision (a).

96.     DEFENDANT HOME DEPOT'S conduct violated Government Code section 12940, subdivision (a), consistent with California Code of Regulations, title 2, section 11066. Specifically, DEFENDANT HOME DEPOT, by and through its management and supervisors, including but not limited to Tawny Gonzales, Larry Snyder, April, and Mark, were aware of Ms. Huey's disabilities that limited major life activities and made her susceptible to serious illness or death if she contracted COVID-19. In spite of her disabilities, Ms. Huey was able to perform the

15

1  essential functions of her position with reasonable accommodations.

2      97.    As set forth above, DEFENDANT HOME DEPOT, by and through its

3  management and supervisors, including but not limited to Tawny Gonzales, Larry Snyder, April,

4  and Mark, unlawfully discriminated against Ms. Huey because of her disability by denying her

5  requests for reasonable accommodations, denying her requests to take leave from work and stay

6  home, and/or denying her requests for a workplace where basic COVID-19 safety precautions

7  were implemented and enforced. DEFENDANT HOME DEPOT, by and through its management

8  and supervisors, including but not limited to Tawny Gonzales, Larry Snyder, April, and Mark,

9  condoned an environment that, among other things, tolerated and encouraged discrimination

10  based on disability that materially and negatively impacted the terms and conditions of Ms.

11  Huey's employment. DEFENDANT HOME DEPOT's statements and conduct complained of

12  herein violated Government Code section 12940, subdivision (a), and the California Code of

13  Regulations, title 2, sections 11019 and 11020.

14      98.    Ms. Huey's disabilities were a substantial motivating reason for DEFENDANT

15  HOME DEPOT, by and through its management and supervisors, including but not limited to

16  Tawny Gonzales, Larry Snyder, April, and Mark, to deny Ms. Huey reasonable accommodations

17  and create the overall unsafe and hostile terms and conditions of employment.

18      99.    The conduct of DEFENDANT HOME DEPOT was a substantial factor in causing

19  harm to Ms. Huey, including her sickness, hospitalization, and death.

20      100.    As an actual and proximate result of the aforementioned violations, PLAINTIFF,

21  as successor in interest to Ms. Huey, has been damaged in an amount according to proof, but in

22  an amount in excess of the jurisdiction of the Court. PLAINTIFF also seeks "affirmative relief"

23  or "prospective relief" as defined by Government Code section 12926, subdivision (a), including

24  back pay, reimbursement of out-of-pocket expenses, and any such other relief that the Court

25  deems proper.

26      101.    As an actual and proximate result of DEFENDANT HOME DEPOT's willful and

27  intentional discrimination, PLAINTIFF, as successor in interest to Ms. Huey, seeks all survival

28  damages, including lost wages, benefits, and other out-of-pocket expenses.

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*JEANINE RANDALL v. HOME DEPOT, et al.*                 V. James DeSimone, Esq.
Case No.:                                     Carmen D. Sabater, Esq.

102.    As an actual and proximate result of DEFENDANT HOME DEPOT's aforementioned acts, Ms. Huey suffered physical injury, pain, suffering, and death.

103.    The above-described actions were perpetrated and/or ratified by a managing agent or officer of DEFENDANT HOME DEPOT, including but not limited to Tawny Gonzales, Larry Snyder, April, and Mark. These acts were done with malice, fraud, oppression, and in reckless disregard of Ms. Huey's rights. Further, said actions were despicable in character and warrant the imposition of punitive damages in a sum sufficient to punish and deter DEFENDANT HOME DEPOT's future conduct.

104.    PLAINTIFF filed a complaint with the California Department of Fair Employment and Housing ("DFEH"). On December 28, 2022, PLAINTIFF received a "Right-to-Sue" Letter from the California Department of Fair Employment and Housing.

105.    PLAINTIFF also pleads for attorney fees and costs as allowed by California Government Code § 12965(b).

## SECOND CAUSE OF ACTION

## FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS IN VIOLATION OF GOV'T CODE §§12940 ET SEQ

### (PLAINTIFF as Successor in Interest Against HOME DEPOT

106.    PLAINTIFF re-alleges the information set forth in the preceding paragraphs and incorporates it into this cause of action as if it was fully alleged herein.

107.    At all times relevant to this matter, the Fair Employment and Housing Act, Government Code section 12940, was in full force and effect and binding on DEFENDANTS. Section 12940, subdivision (m), reads: "It is an unlawful employment practice . . . [f]or an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee. Nothing in this subdivision or in paragraph (1) or (2) of subdivision (a) shall be construed to require an accommodation that is demonstrated by the employer or other covered entity to produce undue hardship, as defined in Section 12926(t), to its operation."

///

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*JEANINE RANDALL v. HOME DEPOT, et al.*                    V. James DeSimone, Esq.
Case No.:                                                        Carmen D. Sabater, Esq.

108.     At all times relevant to this matter, Ms. Huey suffered from a "physical disability" as defined by Government Code section 12926, subdivision (k), and the California Code of Regulations, title 2, section 11065, subdivision (d)(1). In spite of her disability, Ms. Huey was able to perform the essential functions of her position as defined by Government Code section 12926, subdivision (f), and the California Code of Regulations, title 2, section 11065, subdivision (e), and was otherwise able to perform her job had DEFENDANT HOME DEPOT provided the reasonable accommodation required by Government Code section 12926, subdivision (p), and the California Code of Regulations, title 2, section 11068, subdivision (a). 99. Ms. Huey provided notice relating to her disabilities and requested potential accommodations. Despite Ms. Huey's disabilities, she was able to perform the essential duties of her position with reasonable accommodations. However, DEFENDANT HOME DEPOT, by and through its management and supervisors, including but not limited to Tawny Gonzales, Larry Snyder, April, and Mark, repeatedly refused to accommodate Ms. Huey regardless of the type of accommodation she requested, whether it be enforcing the mask mandate inside the Auburn store and/or allowing Ms. Huey to work from home.

109.     In addition, shortly after Ms. Huey requested accommodations, DEFENDANT HOME DEPOT purposefully refused to implement COVID-19 health screenings, which resulted in Ms. Huey training Taylor while Taylor was still recovering from COVID, coughing, and not wearing a mask.

110.     HOME DEPOT cannot establish that allowing Ms. Huey's reasonable accommodation was an "undue hardship" as defined by Government Code section 12926, subdivision (t), and the California Code of Regulations, title 2, section 11068. Accordingly, DEFENDANT HOME DEPOT's conduct violated Government Code section 12940, subdivision (m).

111.     DEFENDANT HOME DEPOT's failure to provide reasonable accommodation was a substantial factor in causing harm to Ms. Huey and to PLAINTIFF as her heir and successor in interest.

///

18

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*JEANINE RANDALL v. HOME DEPOT, et al.*                                  V. James DeSimone, Esq.
Case No.:                                                                Carmen D. Sabater, Esq.

23

112.    As an actual and proximate result of the aforementioned violations, PLAINTIFF, as Ms. Huey's successor in interest, has been harmed in an amount according to proof, but in an amount in excess of the jurisdiction of the Court. PLAINTIFF also seeks "affirmative relief" or "prospective relief" as defined by Government Code section 12926, subdivision (a), including reimbursement of out-of-pocket expenses and any such other relief that the Court deems proper.

113.    As an actual and proximate result of DEFENDANT HOME DEPOT's willful and intentional failure to reasonably accommodate Ms. Huey's disabilities, PLAINTIFF, as the successor in interest to Ms. Huey, lost Ms. Huey's past and future wages, employment benefits, and other out-of-pocket expenses.

114.    As an actual and proximate result of DEFENDANT HOME DEPOT's aforementioned acts, Ms. Huey suffered physical injury, including sickness, hospitalization, intubation, and death.

115.    PLAINTIFF, as successor in interest to Ms. Huey, claims general damages for physical injury and death in an amount according to proof at the time of trial.

116.    The above-described actions were perpetrated and/or ratified by a managing agent or officer of DEFENDANT HOME DEPOT, including but not limited to Tawny Gonzales, Larry Snyder, April, and Mark. These acts were done with malice, fraud, oppression, and in reckless disregard of Ms. Huey's rights. Further, said actions were despicable in character and warrant the imposition of punitive damages in a sum sufficient to punish and deter DEFENDANT HOME DEPOT's future conduct.

117.    PLAINTIFF filed a complaint with the California Department of Fair Employment and Housing ("DFEH"). On December 28, 2022, PLAINTIFF received a "Right-to-Sue" Letter from the California Department of Fair Employment and Housing.

118.    PLAINTIFF seeks all damages and remedies available under state law.

119.    PLAINTIFF also pleads for attorney fees and costs as allowed by California Government Code § 12965(b).

///

///

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*JEANINE RANDALL v. HOME DEPOT, et al.*                                                    V. James DeSimone, Esq.

Case No.:                                                                                                    Carmen D. Sabater, Esq.

**THIRD CAUSE OF ACTION**

**FAILURE TO ENGAGE IN A GOOD FAITH INTERACTIVE PROCESS IN**

**VIOLATION OF GOV'T CODE §§12940 ET SEQ**

**(PLAINTIFF as Successor in Interest Against DEFENDANT HOME DEPOT)**

120.    PLAINTIFF re-alleges the information set forth in the preceding paragraphs and incorporates it into this cause of action as if it was fully alleged herein.

121.    At all times relevant to this matter, the Fair Employment and Housing Act, Government Code section 12940, was in full force and effect and binding on DEFENDANT HOME DEPOT. Government Code section 12940, subdivision (n), reads: "It is an unlawful employment practice . . . [f]or an employer or other entity covered by this part to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition."

122.    At all times relevant to this matter, Ms. Huey suffered from a "physical disability" as defined by Government Code section 12926, subdivision (k), and the California Code of Regulations, title 2, section 11065, subdivision (d)(1). In spite of her disability, Ms. Huey was able to perform the essential functions of her position as defined by Government Code section 12926, subdivision (f), and the California Code of Regulations, title 2, section 11065, subdivision (e), and was otherwise able to perform her job without being at risk of severe illness and death had DEFENDANT HOME DEPOT, by and through its supervisory employees, provided the reasonable accommodation required by Government Code section 12926, subdivision (p), and the California Code of Regulations, title 2, section 11068, subdivision (a).

123.    Although Ms. Huey provided notice to DEFENDANT HOME DEPOT, by and through its management, Human Resources Department, and supervisors, including but not limited to Tawny Gonzales, Larry Snyder, April, and Mark, regarding her physical disability, DEFENDANT HOME DEPOT failed to accommodate Ms. Huey's disabilities as set forth above. Ms. Huey was willing to participate in an interactive process to determine whether a reasonable accommodation could be made.

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*JEANINE RANDALL v. HOME DEPOT, et al.*                                    V. James DeSimone, Esq.

Case No.:                                    Carmen D. Sabater, Esq.

124.   DEFENDANT HOME DEPOT, by and through its managers, executives, and supervisors, including but not limited to Tawny Gonzales, Larry Snyder, April, and Mark, failed to approach Ms. Huey to discuss the possible accommodation of her physical disabilities in good faith.

125.   DEFENDANT HOME DEPOT did not discuss the nature and extent of Ms. Huey's physical disabilities, the advice and recommendation of her health care providers—or the applicable public health guidance from the State of California, the extent of the necessary accommodation, and the need for future accommodation as well as other important areas of inquiry recognized in the United States Equal Employment Opportunity Commission's "Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans With Disabilities Act" noted by the California Legislature in Government Code section 12926.1, subdivision (e). DEFENDANT HOME DEPOT's obligation to engage in the interactive process of accommodation was not excused or waived by Ms. Huey. Because DEFENDANT HOME DEPOT failed to engage in the important interactive process between employee and employer in determining reasonable accommodation, DEFENDANT HOME DEPOT's conduct violated Government Code section 12940, subdivision (n).

126.   DEFENDANT HOME DEPOT's failure to engage in a good-faith interactive process was a substantial factor in causing harm to Ms. Huey.

127.   As an actual and proximate result of the aforementioned violations, PLAINTIFF, as Ms. Huey's successor in interest, has been harmed in an amount according to proof, but in an amount in excess of the jurisdiction of the Court. PLAINTIFF also seeks "affirmative relief" or "prospective relief" as defined by Government Code section 12926, subdivision (a), including reimbursement of out-of-pocket expenses, and any such other relief that the Court deems proper.

128.   As an actual and proximate result of DEFENDANT HOME DEPOT's willful and intentional failure to engage in a good-faith interactive process, PLAINTIFF, as Ms. Huey's successor in interest, lost Ms. Huey's past and future wages, employment benefits, and other out-of-pocket expenses.

///

---

21

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

129.    As an actual and proximate result of DEFENDANT HOME DEPOT's aforementioned acts, Ms. Huey suffered physical illness and injury, hospitalization, intubation, and death.

130.    PLAINTIFF, as successor in interest to Ms. Huey, claims general damages for physical injury and death in an amount according to proof at the time of trial.

131.    The above-described actions were perpetrated and/or ratified by a managing agent or officer of DEFENDANT HOME DEPOT. These acts were done with malice, fraud, oppression, and in reckless disregard of Ms. Huey's rights. Further, said actions were despicable in character and warrant the imposition of punitive damages in a sum sufficient to punish and deter DEFENDANT HOME DEPOT's future conduct.

132.    PLAINTIFF filed a complaint with the California Department of Fair Employment and Housing ("DFEH"). On December 28, 2022, PLAINTIFF received a "Right-to-Sue" Letter from the California Department of Fair Employment and Housing.

133.    PLAINTIFF seeks all damages and remedies available under state law.

134.    PLAINTIFF also pleads for attorney fees and costs as allowed by California Government Code § 12965(b).

**FOURTH CAUSE OF ACTION**

**FAILURE TO PREVENT DISCRIMINATION**

**VIOLATION OF GOV'T CODE §§12940 ET SEQ**

**(PLAINTIFF as Successor in Interest Against DEFENDANT HOME DEPOT)**

135.    PLAINTIFF re-alleges the information set forth in the preceding paragraphs and incorporates it into this cause of action as if it was fully alleged herein.

136.    As an employer, pursuant to Government Code section 12926, subdivision (d), DEFENDANT HOME DEPOT had a duty to prevent unlawful harassment and discrimination. DEFENDANT HOME DEPOT knew or should have known about the discrimination based on Ms. Huey's disability as set forth above. DEFENDANT HOME DEPOT failed to implement adequate training, policies, or instructions that would have prevented the discrimination against Ms. Huey. DEFENDANT HOME DEPOT, therefore, breached its duty to prevent discrimination

against Ms. Huey. Accordingly, DEFENDANT HOME DEPOT violated Government Code section 12940, subdivision (k), and The California Code of Regulations, title 2, section 11019, subdivision (b)(3).

137. Ms. Huey was subjected to discrimination in the course of her employment with DEFENDANT HOME DEPOT described above.

138. DEFENDANT HOME DEPOT failed to take all reasonable steps to prevent discrimination and knowingly discriminated against employees whose disabilities made them vulnerable to death or serious illness from COVID-19 by compelling them to attend large in-person meetings with sick colleagues in a small windowless room—contrary to the then-existing public health guidance.

139. DEFENDANT HOME DEPOT's conduct was a substantial factor in causing harm to PLAINTIFF, as Ms. Huey's successor in interest.

140. As an actual and proximate result of the aforementioned violations, PLAINTIFF, as the successor in interest to Ms. Huey, has been harmed in an amount according to proof, but in an amount in excess of the jurisdiction of the Court. PLAINTIFF also seeks "affirmative relief" or "prospective relief" as defined by Government Code section 12926, subdivision (a), including reimbursement of out-of-pocket expenses, and any such other relief that the Court deems proper.

141. As an actual and proximate result of DEFENDANT HOME DEPOT's willful and intentional discrimination, PLAINTIFF, as the successor in interest to Ms. Huey, lost Ms. Huey's past and future wages, employment benefits, and other out-of-pocket expenses.

142. As an actual and proximate result of DEFENDANT HOME DEPOT's aforementioned acts, Ms. Huey suffered physical injury, including physical illness, hospitalization, intubation, and death.

143. PLAINTIFF, as successor in interest to Ms. Huey, claims general damages for physical injury and death in an amount according to proof at the time of trial.

144. The above-described actions were perpetrated and/or ratified by a managing agent or officer of DEFENDANT HOME DEPOT. These acts were done with malice, fraud, oppression, and in reckless disregard of Ms. Huey's rights. Further, said actions were despicable

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

1  in character and warrant the imposition of punitive damages in a sum sufficient to punish and

2  deter DEFENDANT HOME DEPOT's future conduct.

3      145.   PLAINTIFF filed a complaint with the California Department of Fair Employment

4  and Housing ("DFEH"). On December 28, 2022, PLAINTIFF received a "Right-to-Sue" Letter

5  from the California Department of Fair Employment and Housing.

6      146.   PLAINTIFF seeks all damages and remedies available under state law.

7      147.   PLAINTIFF also pleads for attorney fees and costs as allowed by California

8  Government Code § 12965(b).

9                          **FIFTH CAUSE OF ACTION**

10    **ADVERSE EMPLOYMENT ACTION IN VIOLATION OF PUBLIC POLICY**

11    **(PLAINTIFF as Successor in Interest Against DEFENDANT HOME DEPOT)**

12     148.   PLAINTIFF re-alleges the information set forth in the preceding paragraphs and

13  incorporates it into this cause of action as if it was fully alleged herein.

14     149.   Ms. Huey was subjected to working conditions that violated public policy.

15  DEFENDANT HOME DEPOT, by and through its management and supervisory employees,

16  including Tawny Gonzales, Larry Snyder, April, and Mark, retaliated against Ms. Huey based on

17  Ms. Huey's complaints that DEFENDANT HOME DEPOT was engaged in unlawful conduct—

18  including, but not limited to, disability discrimination and violations of local, state, and federal

19  public health guidance— and, in doing so, violated public policy codified in Government Code

20  section 12940, subdivisions (a), (m), (n), (j), and (k); Government Code section 12945.1, Labor

21  Code sections 98.6, 232.5, and 11025; Code of Federal Regulations section 1604.10, subdivision

22  (b); and the California Code of Regulations, title 2, sections 11019, subdivision (b), and 11021.

23     150.   DEFENDANT HOME DEPOT, by and through its management and supervisory

24  employees, including Tawny Gonzales, Larry Snyder, April, and Mark, retaliated against Ms.

25  Huey by forcing Ms. Huey to work in unsafe working conditions—conditions that they knew

26  were uniquely dangerous and potentially even deadly for Ms. Huey because of her physical

27  disabilities.

28  ///

---

24

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*JEANINE RANDALL v. HOME DEPOT, et al.*                                     V. James DeSimone, Esq.
Case No.:                                                                 Carmen D. Sabater, Esq.

151.    Ms. Huey's complaints regarding disability discrimination and unsafe working conditions, including DEFENDANT HOME DEPOT's failure to adhere to local, state, and federal public health orders and guidance, was a substantial motivating reason for DEFENDANT's retaliation against Ms. Huey described in the preceding paragraph.

152.    Contrary to the public policy enshrined in the FEHA, local, state, and federal public health orders and guidance issued in response to the COVID-19 pandemic, and California Labor Code Section 6401, DEFENDANT HOME DEPOT compelled Ms. Huey to work in conditions that it knew were dangerous to all employees but particularly Ms. Huey who suffered from chronic health conditions that place her at high risk of serious illness or death from COVID-19. These conditions resulted in Ms. Huey contracting COVID-19 while working for HOME DEPOT in its Auburn Store. For Ms. Huey, COVID-19 resulted in hospitalization, intubation, and, ultimately, death.

153.    It is a violation of public policy to compel an employee to work in unsafe and potentially deadly conditions because of her disability.

154.    DEFENDANT HOME DEPOT's conduct described above was a substantial factor in causing Ms. Huey's illness and death.

155.    As an actual and proximate result of the aforementioned violations, PLAINTIFF, as Ms. Huey's successor in interest, has been harmed in an amount according to proof but in excess of the jurisdiction of the Court.

156.    As an actual and proximate result of DEFENDANTS HOME DEPOT's willful and intentional wrongful adverse actions, PLAINTIFF, as Ms. Huey's successor in interest, has lost wages, benefits, and other out-of-pocket expenses.

157.    As an actual and proximate result of DEFENDANT HOME DEPOT's aforementioned acts, Ms. Huey suffered physical injury, including sickness, pain and suffering, hospitalization, and death. PLAINTIFF, as Ms. Huey's successor in interest, claims general damages for physical injury in an amount according to proof at the time of trial.

///

///

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*JEANINE RANDALL v. HOME DEPOT, et al.*                                    V. James DeSimone, Esq.
Case No.:                                                                 Carmen D. Sabater, Esq.

158.   As an actual and proximate result of DEFENDANT HOME DEPOT's aforementioned acts, Ms. Huey suffered extreme mental upset and other emotional distress. PLAINTIFF, as Ms. Huey's successor in interest, claims general damages for mental distress in an amount according to proof at the time of trial.

159.   The above-described actions were perpetrated and ratified by a managing agent or officer of DEFENDANT HOME DEPOT, including but not limited to Tawny Gonzales, Larry Snyder, April, and Mark. These acts were done with malice, fraud, oppression, and in reckless disregard of Ms. Huey's rights. Further, said actions were despicable in character and warrant the imposition of punitive damages in a sum sufficient to punish and deter DEFENDANT HOME DEPOT's future conduct.

160.   PLAINTIFF seeks all damages and remedies available under state law.

161.   PLAINTIFF also pleads for attorney fees and costs as allowed by California Government Code § 12965(b).

### SIXTH CAUSE OF ACTION

### PEMISES LIABILITY BASED ON FEHA VIOLATIONS

### (PLAINTIFF as Successor in Interest Against All DEFENDANTS)

162.   PLAINTIFF, as successor in interest to Ms. Huey, re-alleges the information set forth in the preceding paragraphs and incorporate it into this cause of action as if it was fully alleged herein.

163.   DEFENDANT HOME DEPOT owned, leased, occupied, and/or controlled the office where Ms. Huey worked.

164.   DEFENDANT HOME DEPOT, by and through its supervisory employees, including Tawny Gonzales, Larry Snyder, April, and Mark, knew that Ms. Huey had health conditions that made her highly vulnerable to serious illness or death from COVID-19 and knew that she had requested accommodations for his disability.

165.   DEFENDANT HOME DEPOT, by and through its supervisory employees, including Tawny Gonzales, Larry Snyder, April, and Mark, owed a duty to Ms. Huey when responding to her requests for accommodations, including her requests that DEFENDANT

HOME DEPOT ensure that it maintained the premises in a manner that would ensure that she was not exposed to an excessive risk to her life, health, and wellbeing as a result of her disability when she was in the office.

166. DEFENDANT HOME DEPOT, by and through its supervisory employees, including Tawny Gonzales, Larry Snyder, April, and Mark, breached this duty in all of the following ways: failing to exercise ordinary care in responding to Ms. Huey's requests for accommodations for her disability; failing to implement and enforce basic COVID-19 safety measures in her office, including masking, screening, and physical distancing; failing to take action in response to Ms. Huey's complaints concerning the failure to implement and enforce these measures and/or to permit him to work remotely; failing to abide by the Regional Stay at Home Order issued in early December 2020 and other applicable state rules and regulations concerning COVID-19 safety; forcing Ms. Huey to come to work in person and share a small windowless office with employees exhibiting COVID-19 symptoms; and failing to implement a policy to protect family members from exposure to COVID-19 contracted in the workplace.

167. Indeed, DEFENDANT HOME DEPOT's noncompliance with the applicable workplace safety standards following the December 3, 2020, Regional Stay at Home Order constituted an extreme departure from what a reasonably careful person would do in the same circumstances to make the office safe for Ms. Huey given her disability.

168. DEFENDANT HOME DEPOT, by and through its supervisory employees, including Tawny Gonzales, Larry Snyder, April, and Mark, breached its duty of due care towards Ms. Huey by failing to accommodate her disability in how it used and maintained the premises, including, but not limited to, compelling Ms. Huey to share an office with a colleague without implementing screening for COVID-19 symptoms or enforce mask mandates.

169. As a result of DEFENDANT HOME DEPOT's negligent use and maintenance of the office in connection with Ms. Huey's disability and its failure to use due care in responding to Ms. Huey's requests for accommodations inside the office, Ms. Huey was harmed and suffered physical pain, emotional distress, and, ultimately, death.

///

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*JEANINE RANDALL v. HOME DEPOT, et al.*                    V. James DeSimone, Esq.
Case No.:                                                  Carmen D. Sabater, Esq.

170.    DEFENDANT HOME DEPOT's negligence was a substantial factor in causing Ms. Huey's physical pain, emotional distress, and, ultimately, death.

171.    Ms. Huey's exposure to a symptomatic individual with COVID-19 in her office and resulting illness, hospitalization, and death was a foreseeable and highly probable consequence of DEFENDANT HOME DEPOT's breach of its duty of due care for Ms. Huey, including the breach of its duty of due care in responding to her requests for disability accommodations.

172.    DEFENDANT HOME DEPOT, by and through its supervisory employees, including Tawny Gonzales, Larry Snyder, April, and Mark, had notice of the dangerous conditions in the office for Ms. Huey for a long enough time prior to Ms. Huey contracting COVID-19 at the office to have protected against it.

173.    The negligence of DEFENDANT HOME DEPOT, by and through its supervisory employees, including Tawny Gonzales, Larry Snyder, April, and Mark, caused Ms. Huey to endure severe pain and suffering and emotional distress and, ultimately, resulted in her death.

174.    Consistent with the California Supreme Court's ruling in *Light v. Dep't of Parks & Recreation* (2017) 14 Cal. App. 5th 75 and the California Court of Appeal's decision in *Bagatti v. Dep't of Rehab.* (2002) 97 Cal. App. 4th 344, which held that the Workers Compensation Act does not bar a plaintiff from obtaining damages for physical injuries in a civil lawsuit for tort claims based on conduct that is unlawful under the FEHA, PLAINTIFF, proceeding as Ms. Huey's successors in interest, seek all damages and remedies available under state law for the harm caused by DEFENDANT HOME DEPOT's failure to accommodate Ms. Huey— including its failure to protect Ms. Huey from conditions inside the office that it knew were dangerous for Ms. Huey and that caused Ms. Huey's illness, hospitalization, and death.

175.    PLAINTIFF brings this claim against DEFENDANT HOME DEPOT, seeking all damages available under state law and reasonable attorneys' fees.

///

///

///

28

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

**SEVENTH CAUSE OF ACTION**

**Wrongful Death Resulting from FEHA Violations (Cal. Civ. Proc. Code § 377.60)**

**(PLAINTIFF Against DEFENDANT HOME DEPOT)**

176.    PLAINTIFF re-alleges the information set forth in the preceding paragraphs and incorporates it into this cause of action as if it was fully alleged herein.

177.    PLAINTIFF RANDALL, the surviving child of Ms. Huey, the decedent, asserts a wrongful death action against all DEFENDANTS pursuant to C.C.P. §§ 377.60 et seq. Her claim is based upon the fact that DEFENDANT HOME DEPOT, by and through its officers and agents, including but not limited to Tawny Gonzales, Larry Snyder, April, and Mark, violated the FEHA as described above.

178.    Further, as Ms. Huey's employer, DEFENDANT HOME DEPOT owed a duty to exercise ordinary care to Ms. Huey when responding to her requests for leave and for accommodations. However, DEFENDANT HOME DEPOT breached this duty by allowing Tawny Gonzales, Larry Snyder, April, and Mark to respond to Ms. Huey's requests with conscious disregard for an excessive risk to her life, health, and well-being.

179.    DEFENDANT HOME DEPOT's intentional, negligent, reckless, and wrongful acts and omissions in response to Ms. Huey's requests for leave and accommodations for her disabilities were the direct and legal cause of Ms. Huey's death and the resulting damages to her surviving family, PLAINTIFF RANDALL.

180.    DEFENDANT HOME DEPOT is liable for PLAINTIFF's injuries, either because it was an integral participant in the wrongful conduct, including but not limited to the failure or refusal to accommodate Ms. Huey's physical disabilities that placed her at high risk of death or serious illness from COVID-19, or because it knew about and condoned, authorized, or ratified the discriminatory and unlawful actions of its managers including Tawny Gonzales, Larry Snyder, April, and Mark.

181.    PLAINTIFF is informed and believes and thereon alleges that the acts and omissions of DEFENDANT HOME DEPOT alleged herein—including its refusal to engage in an interactive process with Ms. Huey, failure to accommodate her physical disabilities,

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

discrimination against Ms. Huey based upon her disabilities—were willful, malicious, intentional, oppressive, reckless, and/or done in conscious disregard of the statutory rights, welfare, and safety of Ms. Huey, thereby justifying the award of punitive and exemplary damages in an amount in an amount to be determined at the time of trial.

182.   As a direct and legal result of DEFENDANT HOME DEPOT's acts and omissions, PLAINTIFF suffered damages, including, without limitation, the loss of financial support and benefits, loss of enjoyment of life, emotional distress, medical expenses, funeral and burial expenses, attorneys' fees, costs of suit, other pecuniary losses not yet ascertained, the loss of Ms. Huey's love, affection, society, and companionship.

183.   PLAINTIFF seeks wrongful death damages and all other damages and remedies available under state law.

## EIGHTH CAUSE OF ACTION

### NEGLIGENCE RESULTING IN INJURY TO PLAINTIFF RANDALL

### (PLAINTIFF Individually Against All DEFENDANTS)

184.   PLAINTIFF re-alleges the information set forth in the preceding paragraphs and incorporates it into this cause of action as if it was fully alleged herein.

185.   By December 1, 2020, DEFENDANT HOME DEPOT, by virtue of news reports and local, state, and federal public health orders, recommendations, and guidance, knew all of the following: COVID-19 was highly transmissible; there was no cure or vaccine for COVID-19; COVID-19 could result in death, hospitalization, and/or serious illness; individuals over the age 65 and individuals with chronic health conditions were uniquely at risk of death or serious illness from COVID-19; to prevent the spread of COVID-19, even essential businesses needed to ensure employees capable of working from home could do so, ensure 100% mask compliance, implement a uniform health screening process or protocol for employees, isolate and send home sick employees, require employees to quarantine for a full two weeks after a positive test result, require and enforce social distancing of at least six feet between all employees, and generally adhere to all COVID-19 control recommendations.

///

30

**PLAINTIFF'S COMPLAINT FOR DAMAGES**
*JEANINE RANDALL v. HOME DEPOT, et al.*                                      V. James DeSimone, Esq.
Case No.:                                                                                       Carmen D. Sabater, Esq.
35

186.    HOME DEPOT was aware prior to December 2020 of PLAINTIFF RANDALL's underlying health conditions that place her at high risk of death or serious illness from COVID-19 because Ms. Huey had informed her managers and colleagues about PLAINTIFF RANDALL's conditions.

187.    Accordingly, in December 2020, DEFENDANT HOME DEPOT owed a duty to exercise ordinary care to prevent the spread of COVID-19 from its employees to their employees' at-home households. This duty included a duty to adequately train and supervise its agents, including Tawny Gonzales, Larry Snyder, April, and Mark, and ensure the HOME DEPOT's Auburn store was managed in a manner that complied with state law and regulations as well as applicable public health orders, guidance, and recommendations. The reason for this duty is because the risk posed by a COVID-19 infection was serious and included death and debilitating symptoms, there was no known cure or vaccine, and the COVID-19 virus was highly transmissible, making transmission from a store employee to a member of their household exceedingly foreseeable. Indeed, public health orders, unlike occupational safety standards, were intended to protect the lives of the close contacts of employees (like PLAINTIFF RANDALL)— and not just employees themselves.

188.    DEFENDANT HOME DEPOT breached its duty of care to PLAINTIFF RANDALL in all of the following ways: failing to exercise ordinary care in responding to Ms. Huey's requests for leave to care for her own serious medical conditions; failing to exercise ordinary care in responding to Ms. Huey's requests for accommodations for her physical disabilities that placed her at high risk of serious illness or death from COVID-19; failing to implement and enforce basic COVID-19 safety measures in at the Auburn store, including masking, screening, and physical distancing; failing to comply applicable local, state, and federal rules, recommendations, regulations, and guidance concerning COVID-19 safety; failing to adequately train and supervise employees' managers and supervisors on COVID-19 safety and condoning, ratifying, or authorizing practices that contravened applicable public health guidance; forcing Ms. Huey to come to work in close proximity to other employees with who were visibly ill with COVID-19 symptoms; failing to screening and/or contact tracing for employees suspected

**PLAINTIFF'S COMPLAINT FOR DAMAGES**
*JEANINE RANDALL v. HOME DEPOT, et al.*                                    V. James DeSimone, Esq.
Case No.:                                                                  Carmen D. Sabater, Esq.

1 | of COVID-19 infection or exposures; and, inter alia, failing to implement a process, policy, or

2 | protocol to protect family members from exposure to COVID-19 contracted in the workplace.

3 |     189.    DEFENDANT HOME DEPOT refused to comply with the FEHA and the public

4 | health directives and guidance from the United States Centers for Disease Control, the State of

5 | California, and Placer County throughout 2020. HOME DEPOT's failure to implement basic

6 | COVID-19 safety measures such as mask mandates, social distancing, and employee screening

7 | constituted an extreme departure from what a reasonably careful person would do in the same

8 | circumstances to prevent harm to PLAINTIFF RANDALL and members of other employees'

9 | households.

10 |     190.    In the first week of December 2020, Ms. Huey was training an employee, Taylor

11 | – who was symptomatic and had cut short her quarantine – inside Ms. Huey's small office. Taylor,

12 | like so many HOME DEPOT employees at the Auburn store, also did not wear a mask over her

13 | nose or mouth.

14 |     191.    DEFENDANT HOME DEPOT's breach of its duty of ordinary care towards

15 | PLAINTIFF RANDALL caused her to contract "take home" COVID-19 from Ms. Huey.

16 |     192.    PLAINTIFF RANDALL sustained her own unique injuries, which were neither

17 | collateral to nor derivative of the injuries that Ms. Huey sustained as a result of her COVID-19

18 | infection.

19 |     193.    In particular, PLAINTIFF RANDALL developed debilitating long-term COVID-

20 | 19 symptoms.

21 |     194.    DEFENDANT HOME DEPOT's breach of its duty of ordinary care towards

22 | PLAINTIFF RANDALL was the actual and proximate cause of PLAINTIFF RANDALL's

23 | illnesses.

24 |     195.    Had DEFENDANT HOME DEPOT not breached its duty of acting with due care,

25 | Ms. Huey would never have been in a position to act as a vector of a deadly pathogen to

26 | PLAINTIFF RANDALL.

27 |     196.    Further, PLAINTIFF RANDALL's "take-home" case of COVID-19 was not only

28 | a foreseeable consequence but also a highly probable consequence of DEFENDANT HOME

32

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*JEANINE RANDALL v. HOME DEPOT, et al.*                                  V. James DeSimone, Esq.
Case No.:                               37                            Carmen D. Sabater, Esq.

DEPOT's breach of its duty of due care. Indeed, "take-home" cases of COVID-19—and PLAINTIFF RANDALL's debilitating illnesses—were precisely what the local, state, and federal public health guidance was intended to prevent.

197.  The negligence of DEFENDANT HOME DEPOT caused PLAINTIFF RANDALL to endure severe pain and suffering, emotional distress, and the loss of medical expenses.

198.  PLAINTIFF RANDALL individually brings this claim against DEFENDANT HOME DEPOT, seeking all damages available under state law.

## NINTH CAUSE OF ACTION

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (PLAINTIFF RANDALL Against All DEFENDANTS)

199.  PLAINTIFF re-alleges the information set forth in the preceding paragraphs and incorporates it into this cause of action as if it was fully alleged herein.

200.  By March 19, 2020, DEFENDANT HOME DEPOT knew—or should have known—that COVID-19 was a deadly and highly transmissible virus, that there was no known cure or vaccine, and that it was spreading rampantly through the United States, California, and Placer County.

201.  Accordingly, on or before July 19, 2020, when the state of California mandated masks inside public places, DEFENDANT HOME DEPOT did, or should have foreseen, that forcing Ms. Huey to continue to work without protection and in close proximity to sick colleagues who were not wearing masks would be dangerous and severely frightening—not only for her but also for her family at home.

202.  Under these circumstances, given the seriousness of the danger to employees' at-home families, the overall climate of fear and uncertainty, the high transmissibility of the COVID-19 virus, and the clear and virtually unanimous guidance from the local, state, and federal public health agencies at the time, DEFENDANT HOME DEPOT owed a duty of ordinary care to its employees' families at home.

///

---

33

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

203.     DEFENDANT HOME DEPOT breached this duty when, contrary to all applicable health guidance, it required Ms. Huey to make herself a vector for the COVID-19 virus and bring it home from the workplace to her family.

204.     Even though HOME DEPOT knew that Ms. Huey lived with PLAINTIFF RANDALL, HOME DEPOT required Ms. Huey to come to work where her colleagues were not masked, screened, socially distanced, or quarantined for the full length of time. HOME DEPOT required Ms. Huey to work in close proximity and even train these individuals in her small office.

205.     When much of the country, and virtually all of California, was on lockdown and/or observing strict social distancing, quarantining, and mask-wearing measures, PLAINTIFF RANDALL, lived in fear that DEFENDANT HOME DEPOT would make Ms. Huey a conduit for the virus.

206.     PLAINTIFF RANDALL's worst fears were realized when, on or around December 8, 2020, Ms. Huey developed symptoms of COVID-19. On or around the following day, December 11, 2020, Ms. Huey's grandson, Kenyon, who was 12 years old at the time, became ill with symptoms of COVID-19.

207.     On December 12, 2020, PLAINTIFF RANDALL developed symptoms of COVID-19. PLAINTIFF RANDALL further suffered emotional distress while struggling with COVID-19.

208.     The long-term psychological effects of the trauma that PLAINTIFF RANDALL endured because of the carelessness and negligence of DEFENDANT HOME DEPOT may be permanent and hinder her ability to maintain a balanced life.

209.     Had DEFENDANT HOME DEPOT not breached its duty of acting with due care owed to PLAINTIFF RANDALL: PLAINTIFF RANDALL would not have lived with near-constant fear and anxiety of Ms. Huey being compelled to bring COVID-19 into her home—nor would the extreme emotional distress of becoming ill with COVID-19 and developing long COVID symptoms.

210.     The fear and emotional distress endured by PLAINTIFF RANDALL was not only a foreseeable consequence but also a highly probable consequence of DEFENDANT HOME

**PLAINTIFF'S COMPLAINT FOR DAMAGES**
*JEANINE RANDALL v. HOME DEPOT, et al.*                    V. James DeSimone, Esq.
Case No.:                                                 Carmen D. Sabater, Esq.

DEPOT's breach of its duty of due care owed to Ms. Huey's at-home family. DEFENDANTS' conduct, as described above, was done in conscious disregard for its effect upon PLAINTIFF.

211.    DEFENDANT HOME DEPOT's breach of its duty of due care owed to Ms. Huey's at-home family was the direct and proximate cause of: PLAINTIFF RANDALL's extreme fear of contracting COVID-19 and PLAINTIFF RANDALL's emotional distress while suffering with COVID-19.

212.    DEFENDANT HOME DEPOT is liable for the negligent infliction of emotional distress on PLAINTIFF RANDALL because HOME DEPOT compelled Ms. Huey to work in conditions that were unsafe because of her physical disability and that made him a conduit for the virus that causes COVID-19, which they knew was a serious and potentially deadly threat to both her and her family.

213.    DEFENDANT HOME DEPOT is also liable for the negligent infliction of emotional distress on PLAINTIFF RANDALL because they failed to intervene to prevent or remedy these unsafe conditions at the HOME DEPOT store in Auburn.

214.    PLAINTIFF is informed and believes, and thereon allege, that the DEFENDANTS, by engaging in the aforementioned acts and/or in authorizing and/or ratifying such acts, engaged in willful, malicious, intentional, oppressive, and despicable conduct and acted with willful and conscious disregard of the rights, welfare, and safety of PLAINTIFF.

215.    PLAINTIFF RANDALL, individually and as successor in interest to Ms. Huey, brings this claim against DEFENDANT HOME DEPOT, seeking all damages available under state law.

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

*JEANINE RANDALL v. HOME DEPOT, et al.*                    V. James DeSimone, Esq.
Case No.:                                                  Carmen D. Sabater, Esq.

## **PRAYER FOR RELIEF**

WHEREFORE**,** PLAINTIFF pray that Judgment be entered in their favor and against DEFENDANTS, and each of them, as follows, for:

1. All special damages, according to proof;

2. General damages for emotional distress and mental anguish in a sum according to proof;

3. Exemplary and punitive damages in a sum appropriate to punish DEFENDANTS and set an example for others;

4. Injunctive relief regarding policies and practices affecting accommodations, and requests for accommodations, by employees with disabilities that place them at a heightened risk of death or severe illness due to COVID-19;

5. For prejudgment interest at the prevailing legal rate;

6. Attorney's fees and costs as permitted based on above causes of action; and

7. Such other and further relief as the Court may deem just and proper.


Date: January 27, 2023                                     **V. JAMES DESIMONE LAW**



By: _____
     V. JAMES DESIMONE, ESQ.
     CARMEN D. SABATER, ESQ.

     Attorneys for Plaintiff,
     JEANINE RANDALL

36

1  <u>**DEMAND FOR JURY TRIAL**</u>

2  PLAINTIFF JEANINE RANDALL hereby demand a trial by jury on all claims.

3

4

5  Date: January 27, 2023                    **V. JAMES DESIMONE LAW**

6

7

8  By: _____

9  V. JAMES DESIMONE, ESQ.
   CARMEN D. SABATER, ESQ.

10

11  Attorneys for Plaintiff,
    JEANINE RANDALL

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S COMPLAINT FOR DAMAGES**
*JEANINE RANDALL v. HOME DEPOT, et al.*                          V. James DeSimone, Esq.
Case No.:                                                        Carmen D. Sabater, Esq.

CM-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>— V. James DeSimone (SBN: 119668) and Carmen D. Sabater (SBN: 303560)<br>V. JAMES DESIMONE LAW<br>13160 Mindanao Way, Suite 280<br>Marina del Rey, California 90292<br>TELEPHONE NO.: 310.693.5561     FAX NO.: 323.544.2046<br>ATTORNEY FOR *(Name)*: Plaintiff, Jeanine Randall, et al. | **FOR COURT USE ONLY**<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Placer<br>**01/27/2023 at 11:37:01 AM**<br>By: Karlee M Parsons<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF PLACER
STREET ADDRESS: 10820 JUSTICE CENTER DRIVE
MAILING ADDRESS: SAME
CITY AND ZIP CODE: ROLESVILLE, 95678
BRANCH NAME: HON. HOWARD G. GIBSON COURTHOUSE

CASE NAME:
Randall, et al. v. Home Depot, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: S-CV-0049813 |
|---|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[✓] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [✓] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [✓] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [✓] punitive
4. Number of causes of action *(specify)*: NINE (9)
5. This case [ ] is  [✓] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: January 27, 2023

V. James DeSimone, Esq.
(TYPE OR PRINT NAME)                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courtinfo.ca.gov*

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
   Damage/Wrongful Death
Uninsured Motorist (46) (*if the
   case involves an uninsured
   motorist claim subject to
   arbitration, check this item
   instead of Auto*)
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/
      Wrongful Death
Product Liability (*not asbestos or
   toxic/environmental*) (24)
Medical Malpractice (45)
   Medical Malpractice–
      Physicians & Surgeons
   Other Professional Health Care
      Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip
      and fall)
   Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
   Intentional Infliction of
      Emotional Distress
   Negligent Infliction of
      Emotional Distress
   Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
   Practice (07)
Civil Rights (e.g., discrimination,
   false arrest) (*not civil
   harassment*) (08)
Defamation (e.g., slander, libel)
   (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice
      (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease
      Contract (*not unlawful detainer
      or wrongful eviction*)
   Contract/Warranty Breach–Seller
      Plaintiff (*not fraud or negligence*)
   Negligent Breach of Contract/
      Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open
   book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections
      Case
Insurance Coverage (*not provisionally
   complex*) (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
   Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property (*not eminent
   domain, landlord/tenant, or
   foreclosure*)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal
   drugs, check this item; otherwise,
   report as Commercial or Residential*)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court
      Case Matter
   Writ–Other Limited Court Case
      Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
   (*arising from provisionally complex
   case type listed above*) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of
      County)
   Confession of Judgment (*non-
      domestic relations*)
   Sister State Judgment
   Administrative Agency Award
      (*not unpaid taxes*)
   Petition/Certification of Entry of
      Judgment on Unpaid Taxes
   Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified
   above*) (42)
   Declaratory Relief Only
   Injunctive Relief Only (*non-
      harassment*)
   Mechanics Lien
   Other Commercial Complaint
      Case (*non-tort/non-complex*)
   Other Civil Complaint
      (*non-tort/non-complex*)
**Miscellaneous Civil Petition**
Partnership and Corporate
   Governance (21)
Other Petition (*not specified
   above*) (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult
      Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late
      Claim
   Other Civil Petition

CM-010 [Rev. July 1, 2007]                **CIVIL CASE COVER SHEET**                Page 2 of 2

**V. JAMES DESIMONE LAW**
V. James DeSimone (SBN: 119668)
vjamesdesimone@gmail.com
Carmen D. Sabater (SBN: 303546)
Cds820@gmail.com
13160 Mindanao Way, Suite 280
Marina del Rey, California 90292
Telephone: 310.693.5561
Facsimile: 323.544.6880

Attorneys for PLAINTIFF,
JEANINE RANDALL

**ELECTRONICALLY FILED**
Superior Court of California,
County of Placer
**01/27/2023 at 11:37:01 AM**
By: Karlee M Parsons
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF PLACER

| | |
|---|---|
| JEANINE RANDALL, individually, and as successor in interest to SONIA HUEY<br><br>        PLAINTIFF,<br><br>        v.<br><br>HOME DEPOT, and DOES 1 through 50, inclusive,<br><br>        Defendants. | Case No.:   S-CV-0049813<br><br>**DECLARATION OF JEANINE RANDALL PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 377.32**<br><br>Action Filed:    January 26, 2023<br>Trial Date:      TBD |

I, Jeanine Randall, declare:

1.   The following is from my personal knowledge, and if called to testify, I could and would do so competently.

2.   I am the daughter of Sonia Huey, who died intestate on February 1, 2021, in Roseville, California.

3.   No proceeding is now pending in the state of California for the administration of the Estate of Sonia Huey.

4.   I am the successor in interest to Sonia Huey as defined in section 377.11 of the Code of Civil Procedure and succeed to her interest in the above-entitled proceeding.

///

---
1
**DECLARATION OF JEANINE RANDALL PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 377.32**
*JEANINE RANDALL v. HOME DEPOT, et al.*                              V. James DeSimone,Esq.
Case No.:                                                            Carmen D. Sabater, Esq.

5.   No other person has a superior right to commence the above-entitled proceeding or to be substituted for the decedent in the above-entitled proceeding.

6.   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

7.   A death certificate for Sonia Huey is attached hereto as Exhibit "A" and incorporated herein by reference.


Dated: January 26, 2023

_jeanine randall_

_____

JEANINE RANDALL

**DECLARATION OF JEANINE RANDALL PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 377.32**

*JEANINE RANDALL v. HOME DEPOT, et al.*                    V. James DeSimone, Esq.
Case No.:                                                                           Carmen D. Sabater, Esq.

# EXHIBIT A



# CALIFORNIA
## CERTIFICATION OF VITAL RECORD

OFFICE OF THE CLERK-RECORDER

# COUNTY OF PLACER
AUBURN, CALIFORNIA

3052021029501 **CERTIFICATE OF DEATH** 3202131000378

| USUAL RESIDENCE DATA | PHYSICIANS CERTIFICATION | CORONER'S USE ONLY | STATE REGISTRAR |
|---|---|---|---|

**CERTIFICATE OF DEATH**

1. NAME OF DECEDENT—FIRST: SONIA
2. MIDDLE: LEE
3. LAST: HUEY
6. AGE YRS: 52
7. SEX: F

8. STATE OF BIRTH: CA
11. EVER IN US ARMED FORCES: [ ] YES [X] NO
12. MARITAL STATUS: NEVER MARRIED
13. DATE OF BIRTH: 02/01/2021  
14. HOUR: 1505

SOME COLLEGE — MARITAL: NEVER MARRIED
17. RACE: NATIVE AMERICAN, WHITE

18. USUAL OCCUPATION: SALES
19. KIND OF BUSINESS: SUPPLY STORE
20. YEARS IN OCCUPATION: 20

23. RESIDENCE STREET: 11501 GARNET WAY, APT 2
29. COUNTY: AUBURN / PLACER
31. ZIP CODE: 95602
32. YEARS IN COUNTY: 6
33. STATE: CA

39. INFORMANT'S NAME / RELATIONSHIP: H. KAYLEEN BURKHALTER, MOTHER

28. NAME OF SURVIVING SPOUSE—FIRST: 
29. MIDDLE: 
30. LAST (BIRTH NAME): 

36. FATHER—FIRST: WAYNE
37. MIDDLE: 
38. LAST: WALKER
34. BIRTH STATE: USA-UNK

34. MOTHER—FIRST: HELEN
35. MIDDLE: KAYLEEN
36. LAST (BIRTH NAME): BURKHALTER
38. BIRTH STATE: CA

34. DISPOSITION DATE: 02/03/2021
40. PLACE OF FINAL DISPOSITION: RESIDENCE OF KAYLEEN BURKHALTER 11501 GARNET WAY, APT 2, AUBURN, CA 95602

41. TYPE OF DISPOSITION: CR/RES
42. SIGNATURE OF EMBALMER: ▶ NOT EMBALMED
43. LICENSE NUMBER:

44. NAME OF FUNERAL ESTABLISHMENT: BLUE OAKS CREMATION AND BURIAL SERVICES
45. LICENSE NUMBER: FD1987
46. SIGNATURE OF LOCAL REGISTRAR: ▶ ROBERT LEE OLDHAM, MD
47. DATE: 02/03/2021

101. PLACE OF DEATH: KAISER FOUNDATION HOSPITAL - ROSEVILLE
103. IF HOSPITAL, SPECIFY ONE: [X] IP [ ] EROP [ ] DOA
102. COUNTY: PLACER
104. FACILITY ADDRESS: 1600 EUREKA ROAD
105. CITY: ROSEVILLE

107. CAUSE OF DEATH:
- Immediate Cause: (A) HYPOXIC RESPIRATORY FAILURE — DYS. 0101124
- (B) PULMONARY EMBOLISM — DYS.
- (C) RIGHT VENTRICULAR FAILURE — WKS.
- (D) PNEUMONIA DUE TO CORONAVIRUS DISEASE 2019 — WKS.

108. BIOPSY PERFORMED: [ ] YES [X] NO
109. AUTOPSY PERFORMED: [ ] YES [X] NO
110. USED IN DETERMINING CAUSE: [ ] YES [ ] NO

112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107: DIABETES MELLITUS TYPE II, HYPERTENSION

113. WAS OPERATION PERFORMED FOR ANY CONDITION IN 107 OR 112?: TRACHEOSTOMY PERMANENT- 01/15/2021
113A. IF FEMALE, PREGNANT IN LAST YEAR: [ ] YES [X] NO [ ] UNK

114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE AND PLACE STATED FROM THE CAUSES STATED.
Decedent Attended Since: 12/12/2020
Decedent Last Seen Alive: 02/01/2021
115. SIGNATURE AND TITLE OF CERTIFIER: ▶ SAMJOT SINGH DHILLON M.D.
116. LICENSE NUMBER: C149240
117. DATE: 02/02/2021
117. TYPE ATTENDING PHYSICIAN'S NAME: SAMJOT SINGH DHILLON M.D.
1600 EUREKA ROAD, ROSEVILLE, CA 95661

118. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE AND PLACE STATED FROM THE CAUSES STATED
119. MANNER OF DEATH: [ ] Natural [ ] Accident [ ] Homicide [ ] Suicide [ ] Pending Investigation [ ] Could not be Determined
120. INJURED AT WORK: [ ] YES [ ] NO [ ] UNK
121. INJURY DATE:
122. HOUR:

123. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.):
124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury):
125. LOCATION OF INJURY (Street and number, or location, and city, and zip):
126. SIGNATURE OF CORONER / DEPUTY CORONER: ▶
127. DATE:
128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER:

STATE REGISTRAR: A | B | C | D | E
*0300100493973B*
FAX AUTH # | CENSUS TRACT

---

### CERTIFIED COPY OF VITAL RECORDS
STATE OF CALIFORNIA, COUNTY OF PLACER

This is a true and exact reproduction of the document officially registered and placed on file in the office of the Placer County Clerk-Recorder.

DATE ISSUED  **FEB 0 9 2021**

This copy is not valid unless prepared on an engraved border displaying the date, seal and signature of the Clerk-Recorder.

\* 0 0 0 3 0 7 5 5 2 \*

RYAN RONCO
PLACER COUNTY CLERK-RECORDER

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

# Superior Court of the State of California

## In and For The County of Placer

**CASE NO.  S-CV-0049813**

## A CASE MANAGEMENT CONFERENCE HAS BEEN SCHEDULED:

DATE:  **05/22/2023**
TIME: ☒**2:00 P.M. If your case number starts with "S-CV"**
        ☐**3:00 P.M. If your case number starts with "S-CV" and is deemed Complex**
        ☐**3:00 P.M. If your case number starts with "M-CV"**
DEPT:  **40 - 10820 Justice Center Drive, Roseville, California**

### IF YOU DO NOT HAVE AN ATTORNEY, READ THIS:

The judge does **not** decide whether you win or lose your case at this court date.  If you do not file an "Answer," or other "responsive pleading," you will automatically lose this case, usually before this court date.  The Answer or responsive pleading must be given to the court clerk within 30 days of the day you received the Summons, along with a filing fee or application for waiver of court fees.

You can get free help filling out your Answer or responsive pleading at the court's Legal Help Center.  For more information or to schedule an appointment, go to the court's website at www.placer.courts.ca.gov and select "Legal Help Center."

### INFORMATION ABOUT CASE MANAGEMENT CONFERENCES:

15 calendar days before the Case Management Conference, you must file and serve a completed Case Management Statement (CM-110).

You do not need to come to court for the first Case Management Conference.  You can see the court's proposed orders 12 calendar days before the Case Management Conference on the court's website, www.placer.courts.ca.gov. Select "Tentative Rulings and Calendar Notes," then "Civil Case Management Conference."  If you do not have Internet access, call the court at 916-408-6000 to get the information.

**The court does not provide a court reporter** at Case Management Conferences or Law & Motion hearings.  If you want the proceedings reported, you must provide your own court reporter at your own expense.

IF YOU WANT TO APPEAR BY TELEPHONE, you must schedule your telephonic appearance through the court's website, www.placer.courts.ca.gov. Select "Telephonic Appearance System." For more information on the telephonic appearance system, please visit our "How to" guide on the website. YOU MUST PAY ONLINE TO USE THIS SERVICE UNLESS YOU HAVE BEEN GRANTED A FEE WAIVER BY THE COURT.

POS-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>V. James DeSimone (SBN: 119668)<br>V. JAMES DESIMONE LAW<br>13160 Mindanao Way, Suite 280<br>Marina Del Rey, California  90292<br><br>TELEPHONE NO.: 310.693.5561    FAX NO. *(Optional):* 323.544.6880<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):*  Jeanine Randall, individually & successor in interest to Sonia Huey | *FOR COURT USE ONLY*<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Placer<br>**02/14/2023 at 12:00:00 AM**<br>By: Karlee M Parsons<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  PLACER
STREET ADDRESS:  10820 JUSTICE CENTER DRIVE
MAILING ADDRESS:  SAME
CITY AND ZIP CODE:  ROSEVILLE  95678
BRANCH NAME:  HON. HOWARD G. GIBSON COURTHOUSE

| | |
|---|---|
| PLAINTIFF/PETITIONER:  Jeanine Randall, individually & successor in interest to Sonia Huey, Plaintiff<br><br>DEFENDANT/RESPONDENT: Home Depot, et al. | CASE NUMBER:  S-CV-0049813 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:  M12921 |

*(Separate proof of service is required for each party served.)*

1.  At the time of service I was at least 18 years of age and not a party to this action.
2.  I served copies of:
    a.  ☑  summons
    b.  ☑  complaint
    c.  ☐  Alternative Dispute Resolution (ADR) package
    d.  ☑  Civil Case Cover Sheet *(served in complex cases only)*
    e.  ☐  cross-complaint
    f.  ☑  other *(specify documents):*  Declaration Of Jeanine, Exhibit A

3.  a. Party served *(specify name of party as shown on documents served):*  HOME DEPOT

    b. ☑  Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
       CSC Lawyers Incorp/Agent  (Rec'd By:  KOY SAECHAO, Intake Specialist

4.  Address where the party was served: 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA  95833

5.  I served the party (check proper box)
    a. ☑  **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 02/10/2023    (2) at *(time):* 12:10PM
    b. ☐  **by substituted service.** On *(date):*    at *(time):*    I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

    (1) ☐  **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

    (2) ☐  **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

    (3) ☐  **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

    (4) ☐  I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*    from *(city):*    or ☐ a declaration of mailing is attached.

    (5) ☐  I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | American LegalNet, Inc.<br>www.FormsWorkflow.com   Code of Civil Procedure, § 417.10 |

| PLAINTIFF/PETITIONER: Jeanine Randall, individually & successor in interest to Sonia Huey, Plaintiff | CASE NUMBER: S-CV-0049813 |
|---|---|
| DEFENDANT/RESPONDENT: Home Depot, et al. | |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                    (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.) (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☐ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☑ On behalf of *(specify):* HOME DEPOT
    under the following Code of Civil Procedure section:

| | | |
|---|---|---|
| ☐ 416.10 (corporation) | ☑ 415.95 (business organization, form unknown) | |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) | |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) | |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) | |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) | |
| | ☐ other: | |

7. **Person who served papers**
  a. Name: JENICE ROSSNER
  b. Address: 1171 S. Robertson Blvd., Suite 450, Los Angeles, CA 90035
  c. Telephone number: (800)440-5738
  d. **The fee** for service was: $
  e. I am:
    (1) ☐ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☑ a registered California process server:
      (i) ☐ owner ☐ employee ☑ independent contractor.
      (ii) Registration No.: 1998-02
      (iii) County: SACRAMENTO

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 02/13/2023

JENICE ROSSNER           ▶ *(signature)*
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)    (SIGNATURE)

American LegalNet, Inc.
www.FormsWorkflow.com

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF PLACER

# Case Summary

**S-CV-0049813**
Randall, Jeanine vs. Home Depot
Civil-Roseville

### Portal Case - Summary - ENLI

#### ⌄ Parties

Plaintiff - Jeanine Randall
Defendant - <u>Home Depot</u>

#### ⌄ Future Court Hearings

| Next Hearing Date & Time | Hearing Type | Courtroom Locati |
|---|---|---|
| May 22, 2023 2:00 PM | Case Management Conference | Department 40 108 |

#### ⌄ All Court Hearings

| Date/Time | Type | Result | Official | Location |
|---|---|---|---|---|
| S-CV-0049813: Randall, Jeanine vs. Home Depot | | | | |
| Complaint - Employment: Other (15) filed on 01/27/2023 | | | | |
| 05/22/2023 02:00 PM | Case Management Conference | | | Department 40 |

#### ⌄ Document Register

**Documents**

To view unavailable documents on cases you have been granted access to through the courts electronic case access process, you need to view them through the My Existing Cases tab from within your account. If they still show unavailable there, they are either not scanned into the case or not electronically available.

| Name | Date | Download |
|---|---|---|
| Complaint: | 01/27/2023 | **Download:** 🔍 |
| Civil Case Cover Sheet: | 01/27/2023 | **Download:** 🔍 |

| | | |
|---|---|---|
| Declaration: | 01/27/2023 | **Download:** 🔍 |
| Summons: | 01/27/2023 | **Download:** 🔍 |
| Notice: Case Management Conference | 01/30/2023 | **Download:** 🔍 |
| Proof: Service- Summons Home Depot | 02/14/2023 | **Download:** 🔍 |

⌄ Attorney

| Date Assigned | Assignment Type | Name | Status | Representing/On Behalf Of |
|---|---|---|---|---|
| 01/27/2023 | | DeSimone, Vincent James V. James DeSimone Law | Current | |

⌄ Invoices and Payments

01/30/2023
    Unlimited Civil Complaint - Total Amount: $435.00 Balance: $0.00
        01/30/2023 $435.00

Copyright © Journal Technologies, USA. All rights reserved.

# EXHIBIT B

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|

V. James DeSimone (SBN: 119668)
V. JAMES DESIMONE LAW
13160 Mindanao Way, Suite 280
Marina Del Rey, California 90292

TELEPHONE NO.: 310.693.5561    FAX NO. *(Optional):* 323.544.6880

E-MAIL ADDRESS *(Optional):*

ATTORNEY FOR *(Name):* Jeanine Randall, individually & successor in interest to Sonia Huey

**ELECTRONICALLY FILED**
Superior Court of California,
County of Placer
**02/14/2023 at 12:00:00 AM**
By: Karlee M Parsons
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF PLACER
STREET ADDRESS: 10820 JUSTICE CENTER DRIVE
MAILING ADDRESS: SAME
CITY AND ZIP CODE: ROSEVILLE 95678
BRANCH NAME: HON. HOWARD G. GIBSON COURTHOUSE

PLAINTIFF/PETITIONER: Jeanine Randall, individually & successor in interest to Sonia Huey, Plaintiff

DEFENDANT/RESPONDENT: Home Depot, et al.

CASE NUMBER: S-CV-0049813

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: M12921 |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ summons
   b. ☑ complaint
   c. ☐ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☑ other *(specify documents):* Declaration Of Jeanine, Exhibit A

3. a. Party served *(specify name of party as shown on documents served):* HOME DEPOT

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   CSC Lawyers Incorp/Agent  (Rec'd By: KOY SAECHAO, Intake Specialist

4. Address where the party was served: 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833

5. I served the party (check proper box)
   a. ☑ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 02/10/2023    (2) at *(time):* 12:10PM
   b. ☐ **by substituted service.** On *(date):*    at *(time):*    I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*    from *(city):*    or ☐ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | American LegalNet, Inc. www.FormsWorkflow.com | Code of Civil Procedure, § 417.10 |
|---|---|---|---|

| PLAINTIFF/PETITIONER: Jeanine Randall, individually & successor in interest to Sonia Huey, Plaintiff | CASE NUMBER: S-CV-0049813 |
|---|---|
| DEFENDANT/RESPONDENT: Home Depot, et al. | |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                     (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*) (Code Civ. Proc., § 415.30.)*

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☐ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☑ On behalf of *(specify):* HOME DEPOT
    under the following Code of Civil Procedure section:

|  |  |
|---|---|
| ☐ 416.10 (corporation) | ☑ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
|  | ☐ other: |

7. **Person who served papers**
  a. Name: JENICE ROSSNER
  b. Address: 1171 S. Robertson Blvd., Suite 450, Los Angeles, CA 90035
  c. Telephone number: (800)440-5738
  d. **The fee** for service was: $
  e. I am:
    (1) ☐ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☑ a registered California process server:
      (i) ☐ owner ☐ employee ☑ independent contractor.
      (ii) Registration No.: 1998-02
      (iii) County: SACRAMENTO

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 02/13/2023

JENICE ROSSNER          ▶ *(signature)*
────────────────────────
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)      (SIGNATURE)

American LegalNet, Inc.
www.FormsWorkflow.com

# EXHIBIT C

# Delaware

### The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "HOME DEPOT U.S.A., INC." IS DULY INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL CORPORATE EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE NINTH DAY OF MARCH, A.D. 2023.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL REPORTS HAVE BEEN FILED TO DATE.

AND I DO HEREBY FURTHER CERTIFY THAT THE SAID "HOME DEPOT U.S.A., INC." WAS INCORPORATED ON THE EIGHTH DAY OF AUGUST, A.D. 1989.

AND I DO HEREBY FURTHER CERTIFY THAT THE FRANCHISE TAXES HAVE BEEN PAID TO DATE.

Jeffrey W. Bullock, Secretary of State

2204347  8300

SR# 20230934007

You may verify this certificate online at corp.delaware.gov/authver.shtml

Authentication: 202880413

Date: 03-09-23

# EXHIBIT D

**Department of State: Division of Corporations**

[Allowable Characters]

**HOME**

|  | Entity Details |
|---|---|

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| File Number: | **2204347** | Incorporation Date / Formation Date: | **8/8/1989** (mm/dd/yyyy) |
|---|---|---|---|
| Entity Name: | **HOME DEPOT U.S.A., INC.** | | |
| Entity Kind: | **Corporation** | Entity Type: | **General** |
| Residency: | **Domestic** | State: | **DELAWARE** |

**REGISTERED AGENT INFORMATION**

| Name: | **CORPORATION SERVICE COMPANY** | | |
|---|---|---|---|
| Address: | **251 LITTLE FALLS DRIVE** | | |
| City: | **WILMINGTON** | County: | **New Castle** |
| State: | **DE** | Postal Code: | **19808** |
| Phone: | **302-636-5401** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status  ○ Status,Tax & History Information

[ Submit ]

[ View Search Results ]                    [ New Entity Search ]

For help on a particular field click on the Field Tag to take you to the help area.

site map  |  privacy  |  about this site  |  contact us  |  translate  |  delaware.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2023, I caused a copy of **DECLARATION OF JAMES R. EVANS, JR. IN SUPPORT OF NOTICE OF REMOVAL** to be served upon counsel in the manner described below.

Participants in the case who are registered CM/ECF users will be served by the Eastern District CM/ECF system. In addition, the following counsel will be served in the manner described below:

Via U.S. First Class Mail:

| | |
|---|---|
| V. James Simone, Esq.<br>Carmen D. Sabater, Esq.<br>V. JAMES DESIMONE LAW<br>13160 Mindanao Way, Suite 280<br>Marina Del Rey, CA 90292 | Counsel for Plaintiff<br>JEANINE RANDALL, successor in interest for SONIA HUEY<br><br>Telephone:  (310) 693-5561<br>Facsimile:   (310) 544-6880<br><br>E-Mail:  vjamesdesimone@gmail.com<br>Cds820@gmail.com |

*/s/ James R. Evans*
James R. Evans

Attorney for Defendant
HOME DEPOT U.S.A., INC.

DECLARATION OF JAMES R. EVANS IN SUPPORT OF NOTICE OF REMOVAL

LEGAL02/42691468v8