UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANINE RANDALL, individually and as successor in interest to SONIA HUEY,<br><br>Plaintiff,<br><br>v.<br><br>HOME DEPOT, et al.,<br><br>Defendants. | No. 2:23-cv-00476-DJC-CSK<br><br><br>ORDER |

Pending before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6).  Defendant alleges that Plaintiff's claims fail because they are time barred and/or fail to state a claim upon which relief can be granted.  For the reasons discussed below, the Court GRANTS IN PART and DENIES IN PART the Motion to Dismiss.

**BACKGROUND**

Plaintiff Jeanine Randall filed suit against Defendant Home Depot U.S.A. following the death of her mother, Sonia Huey.  Plaintiff is the heir and successor in interest of Huey.  (Compl. (ECF No. 1-1, Ex. A) ¶ 19.)  Defendant employed Huey at the Home Depot store in Auburn, California in 2020, during the start of the COVID-19

pandemic. (*See id*. ¶¶ 1, 2.) Huey worked in a small, windowless office that she shared with another employee. (*Id*. ¶ 2.) Huey had health conditions that put her at a high risk for death or serious illness from COVID-19, including diabetes, chronic obstructive pulmonary disease, heart disease, and morbid obesity. (*Id*. ¶ 4.) Defendant was aware of Huey's health conditions and had even allowed her to park closer to the store entrance due to her breathing problems. (*Id*.)

In April 2020, Huey provided Home Depot Human Resources with a letter from her doctor stating that she was at high risk for COVID-19 given her serious chronic medical conditions per CDC guidelines. (*Id*. ¶ 6.) Huey also requested accommodations for her disabilities, including compliance with public health guidance and occupational safety standards intended to limit the spread of COVID-19. (*Id*. ¶ 7.) These requests were made to Larry Snyder, the Home Depot regional manager in the Sacramento area, Tawny Gonzalez, who worked in Human Resources, and April, Huey's direct manager. (*Id*. ¶¶ 7, 39.) But Defendant did not allow Huey to work remotely and is alleged to have failed to implement basic COVID-19 safety measures. (*Id*. ¶ 8.)

In early December 2020, Plaintiff alleges that Defendant made no effort to accommodate Huey's needs and had her train an employee who Defendant knew had not abided by COVID-19 guidelines – including failing to follow the quarantine period while still exhibiting COVID-19 symptoms. (*Id*. ¶¶ 9,10.) On December 8, 2020, Huey developed symptoms consistent with COVID-19 and tested positive for COVID-19 two days later. (*Id*. ¶ 11.) Huey was told "not to tell anyone" about her positive result. (*Id*.) On December 12, 2020, Huey was hospitalized after her symptoms worsened, and Plaintiff also developed COVID-19 symptoms. (*Id*. ¶ 13.) By December 21, 2020, Huey was intubated, went into a coma, and ultimately passed away on February 1, 2021. (*Id*. ¶¶ 14,15, 86.) Huey's cause of death was listed as "pneumonia due to [COVID-19]." (*Id*. ¶ 86.) Plaintiff continues to struggle with the long-term health effects of her own COVID-19 diagnosis, including an altered sense of smell, extreme

fatigue, brain fog, intermittent joint paint, shortness of breath and issues with short-term memory.  (*Id.* ¶ 16.)  In a worker's compensation case that was filed on behalf of Huey a Qualified Medical Examiner found "compelling" evidence that Huey's death from COVID-19 was caused by workplace exposure.  (*Id.* ¶ 17.)

Plaintiff, as Huey's successor in interest, asserts violations of the Fair Employment and Housing Act for disability discrimination, failure to accommodate, failure to engage in a good faith interactive process regarding requests for accommodation, and failure to prevent discrimination.  Plaintiff, as Huey's successor in interest, also asserts tort claims for adverse employment action in violation of public policy, premises liability, and wrongful death based on Defendant's violation of FEHA.  Lastly, Plaintiff individually brings causes of action for negligence and negligent infliction of emotional distress against Defendant, but the Parties stipulated to the dismissal of these claims with prejudice (ECF No. 19).[1]  Defendant now moves to dismiss Plaintiff's complaint, alleging that some of her claims are barred, and others fail to plausibly state a claim upon which relief can be granted.  (*See generally* Mot. Dismiss (ECF No. 5).)  Plaintiff issued an Opposition (Opp'n (ECF No. 9),) and Defendant Replied (Reply (ECF No. 13),).  The matter was taken under submission without oral argument in accordance with Local Rule 230(g).

## LEGAL STANDARD

A party may move to dismiss for "failure to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P.12(b)(6).  The motion may be granted only if "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted).  The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party."  *Steinle v. City &*

---

[1] Defendant also requests that this Court stay the litigation pending the outcome of the California Supreme Court's guidance on certified questions in *Kuciemba v. Victory Woodworks, Inc.,* 31 F.4th 1268 (9th Cir. 2022) because it relates to the NIED and negligence claims.  (MTD at 9.)  Because those causes of actions are dismissed with prejudice the Court DENIES Defendant's request as moot.

1  *Cnty. S.F.*, 919 F.3d 1154, 1160 (9th Cir. 2019) (citation omitted).  However, if the
2  complaint's allegations do not "plausibly give rise to an entitlement to relief" the
3  motion must be granted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A complaint
4  need only contain "a short and plain statement of the claim showing that the pleader
5  is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell. Atl.*
6  *Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  However, this rule demands more than
7  unadorned accusations; "sufficient factual matter" must make the claim at least
8  plausible.  *Iqbal,* 556 U.S. at 678.  In the same vein, conclusory or formulaic recitations
9  of elements do not alone suffice.  *See id*.  "A claim has facial plausibility when the
10 plaintiff pleads factual content that allows the court to draw the reasonable inference
11 that the defendant is liable for the misconduct alleged."  *Id*. (citation omitted).

**DISCUSSION**

**I.     Statute of Limitations**

Defendant argues that Plaintiff's fifth cause of action for adverse employment action in violation of public policy and sixth cause of action for premises liability should be dismissed because they are barred by the applicable statute of limitations. Under California Civil Procedure Code § 335.1, "[a]n action . . . for the death of, an individual caused by the wrongful act or neglect of another" has a two-year statute of limitations.  Plaintiff does not disagree that section 335.1 governs the causes of actions here.  Rather, the Parties dispute the date that the claims accrued.

Plaintiff contends that the premises liability and adverse employment action claims did not accrue until Huey's death on February 1, 2021.  Defendant argues that the relevant date is December 8, 2020, which is when Huey contracted COVID-19.

A plaintiff generally must file suit within a specified time after the cause of action accrues.  Cal. Code Civ. Proc. § 312.  Accrual occurs for a cause of action "when [it] is complete with all of its elements – those elements being wrongdoing, harm, and causation."  *Pooshs v. Philip Morris USA, Inc*., 51 Cal. 4th 788, 797 (2011) (citation and internal quotations omitted).  In situations where a plaintiff is aware of both an injury

4

and its wrongful cause but is uncertain as to how serious the resulting damages will be or whether additional injuries will later manifest, the California Supreme Court generally favors "prompt litigation." *Id.* This is true even when the extent of damages is speculative. *Id.* (citing *Davies v. Krasna,* 14 Cal. 3d 502, 514 (1975) ("[T]he infliction of appreciable and actual harm, however uncertain in amount, will commence the statutory period."). But under the discovery rule, accrual is postponed until the plaintiff "discovers, or has reason to discover, the cause of action." *Norgart v. Upjohn Co.,* 21 Cal. 4th 383, 397 (1999). Discovery occurs when the plaintiff develops reason to suspect a factual basis for the action. *Pooshs,* 51 Cal. 4th 797. (citations omitted).

      Plaintiff primarily relies on *Pooshs v. Philip Morris USA,* to support her argument that the later accrual date applies here. In *Pooshs,* the California Supreme Court considered "[w]hen multiple distinct personal injuries allegedly arise from [a single harm], does the earliest injury trigger the statute of limitations for all claims, including those based on the later injury?" *Id.* at 792. There, the plaintiff was a long-term cigarette smoker who was diagnosed with COPD caused by her smoking habit. *Id.* at 791. Plaintiff did not sue the cigarette manufacturers upon receiving her COPD diagnosis, and the statutory period elapsed. *Id.* A few years later, the plaintiff was diagnosed with periodontal disease, again caused by her smoking habit, but did not sue and the statutory period elapsed. *Id.* Another couple of years later, the plaintiff was diagnosed with lung cancer and sued the cigarette manufacturer. *Id.* The California Supreme Court held that the statute of limitations had not run on her claim. *See id.* at 802–03. The Court reasoned that "two physical injuries – both caused by the same tobacco use over the same period of time – can, in some circumstances, be considered qualitatively different for purposes of determining when the applicable statute of limitations period begins to run." *Id.* at 792 (citation and internal quotations omitted). Because the plaintiff had plausibly asserted that her lung disease was "separate and distinct" from her other two smoking-related diseases, the earlier diagnoses did not trigger the statute of limitations for a lawsuit based on her later

5

disease. *Id.* at 801–02. Lastly, the California Supreme Court limited its holding to latent disease cases, without determining whether the same rule should apply in other contexts. *Id.* at 792.

Here, the premises liability and adverse employment action claims are rooted in Huey's diagnosis and death. Considering the *Pooshs* decision, it does not appear from the face of the Complaint that Huey suffered from "separate and distinct" injuries such that the February 2021 date control. In *Pooshs,* the California Supreme Court acknowledged the plaintiff's allegations that her lung cancer was separate from her earlier-discovered COPD and periodontal disease. *See id.* at 802–03 (explaining that plaintiff alleged "that COPD is a separate illness, which does not pre-dispose or lead to lung cancer and that it has nothing medically, biologically, or pathologically to do with lung cancer."). Here, however, Huey's death is alleged to be the direct result of her COVID-19 diagnosis, rather than a separate harm unrelated to the initial diagnosis. She was diagnosed in December 2020 and remained hospitalized from then until her death in February 2021. Her symptoms and ultimate cause of death link back to the COVID-19 diagnosis. As such, there is no sign that the two physical injuries here are "qualitatively different" for purposes of triggering a later date of accrual. Thus, Defendant's Motion to Dismiss with respect to the fifth cause of action for adverse employment action in violation of public policy and sixth cause of action for premises liability is GRANTED with leave to amend.

## II.     California Workers' Compensation Act Exclusive Remedy Rule

Defendant also argues that Plaintiff's seventh cause of action for wrongful death must be dismissed because it is barred by the California Workers' Compensation Act (WCA).[2] Plaintiff contends that the cause of action is not barred because it is rooted in violations of California's anti-discrimination statutes such that the exclusive remedy rule is inapplicable. The WCA establishes a comprehensive scheme that governs

---

[2] Defendant also argues that Plaintiff's sixth cause of action for premises liability must be dismissed on this ground, but the Court has found that the statute of limitations on the claim has run.

compensation provided to employees in California for injuries they experience in the course and scope of their employment. *Charles J. Vacanti, M.D., v. State Comp. Ins. Fund,* 24 Cal. 4th 800, 810 (2001). The "compensation bargain" lies at the heart of this statutory scheme. Under this compromise, employees are generally prohibited from pursuing tort remedies against an employer or its agents in exchange for employer liability for almost any injury sustained by its employees arising out of and in the course of their employment. *Id.* at 811 (citation omitted). The workers' compensation exclusivity rule "generally limits an employee's remedies against an employer for work-related injuries to those remedies provided by the statute itself" to ensure the effectiveness of the compensation bargain. *King v. CompPartners, Inc.,* 5 Cal. 5th 1039, 1051 (2018) (citations omitted).

To determine whether the exclusivity rule bars a cause of action, courts first determine whether the alleged injury falls within the scope of the provision and then considers the nature of the underlying acts. *Vacanti,* 24 Cal. 4th at 811–12. Where such acts "are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances," the exclusivity bar likely applies. *Fermino v. Fedco, Inc.,* 7 Cal. 4th 701, 712 (1994). There are two limited exceptions to WCA preemption: (1) where the employer's conduct contravenes a fundamental public policy and (2) where the conduct in question "exceeds the risks inherent in the employment relationship." *Thomas v. Starz Ent., LLC,* No. 2:15-cv-09239-CAS-MRWx, 2016 WL 844799, at *8 (C.D. Cal. Feb. 29, 2016).

The first exception is inapplicable here, as the California Supreme Court has limited it to *Tameny* wrongful discharge claims. *Miklosy v. Regents of Univ. of California,* 44 Cal. 4th 876, 902–03 (2008). The second exception applies where conduct exceeds the risks in the employment relationship. In *Miklosy,* the California Supreme Court rejected the argument that whistleblower retaliation was not a risk

7

inherent in the employment relationship and held that the plaintiff's IIED clam was subject to worker's compensation exclusivity. *Id.* at 903.

Plaintiff primarily relies on *Light v. Department of Parks & Recreation,* 14 Cal. App. 5th 75, 96–99 (2017), a California Court of Appeal decision, to support her argument that the exclusivity rule does not apply. [3] In *Light,* the California Court of Appeal considered *Miklosy* in the context of an IIED claim premised on a FEHA violation. 14 Cal. App. 5th at 96. There, the plaintiff employee filed an action against her employer for retaliation, disability discrimination, and failure to prevent discrimination or retaliation under FEHA, assault, false imprisonment, and intentional infliction of emotional distress. *Id.* at 80–81. The court held that the plaintiff's IIED claim was not barred by workers' compensation exclusivity because her injuries were based on conduct prohibited by FEHA. *See id.* at 101. The court distinguished *Miklosy* on the ground that it did not consider case law supporting the proposition that conduct violating FEHA is not part of the employment relationship. *Id.* at 100 (collecting cases discussing FEHA and IIED). Thus, the California Court of Appeal held that plaintiff's IIED claim was not subject to the exclusive remedy rule because of the long-held view that unlawful discrimination and retaliation in violation of FEHA is outside the compensation bargain. *Id.* at 101.

Although the Court recognizes that *Light* and *Miklosy* involved IIED claims, *Light*'s discussion of FEHA violations in the context of workplace harms is compelling. Here, Plaintiff's claim is based on the argument that a wrongful death occurred because Defendant violated the FEHA in its treatment of Huey's physical disability. FEHA enacts the State's goal "to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination. . . on account of. . .physical disability. . . ." Cal. Govt. Code § 12920. Because unlawful

---

[3] Defendant cites to two California Court of Appeals cases: *Yau v. Allen,* 229 Cal. App. 4th 144 (2014) and *Vasquez v. Franklin Mgmt. Real Est. Fund,* 222 Cal. App. 4th 819 (2013). But the Court finds the discussion in *Light* to be more on point to the instant discussion.

8

discrimination and retaliation are outside the scope of the compensation bargain, and expressly prohibited by a California statute, the Court finds that the exclusivity rule does not apply. *See*, *e.g.*, *Livingston v. Kemper Sports Mgmt.*, No. 1:12-cv-01427-LJO-SKO, 2012 WL 5349174, at *8 (E.D. Cal. Oct. 26, 2012) (noting that plaintiffs' wrongful death claim based on defendants' alleged FEHA violations would not be barred by the exclusivity provisions of the WCA).

The Executive Order referenced by Defendant does not change this analysis. The Order appears to discuss causation as it pertains to COVID-19 and the workplace and does not impact Plaintiff's claims. Defendant also contends that Plaintiff's filing of a worker's compensation claim on Huey's behalf concedes that the behavior here falls within the compensation bargain. That said, at this stage the Court does not possess enough detail about the contours of the worker's compensation claim. (*See* Compl. ¶¶ 17, 70 referencing Huey's worker's compensation claim.) Thus, Plaintiff's claim for wrongful death premised on FEHA violations may proceed and Defendant's motion to dismiss as to the seventh cause of action is DENIED.

### III.     FEHA Claims

#### A. Disability Discrimination

Plaintiff's first cause of action is disability discrimination under FEHA. To state a prima facie disability discrimination claim, the plaintiff must plead that she "(1) suffered from a disability, or was regarded as suffering from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations, and (3) was subjected to an adverse employment action because of the disability or perceived disability." *Wills v. Super. Ct.*, 195 Cal. App. 4th 143, 159–60 (2011). The Court finds that Plaintiff has not established that Huey was subjected to adverse employment action because of her disability.

#### 1. Qualifying Disability

To state a FEHA claim, the plaintiff must first plead a disability covered by FEHA. *See* Cal. Gov't Code § 12940(a). FEHA includes temporary disabilities within

its broad definition of disability. *Diaz v. Fed. Express Corp.*, 373 F. Supp. 2d 1034, 1048 (C.D. Cal. 2005). The California Legislature clarified that conditions such as diabetes and heart disease are explicitly covered under FEHA. *Id.* (citing Cal. Gov. Code §12926.1(c)).

Here, the Complaint states that Huey suffered from diabetes and other chronic health conditions. (Compl. ¶ 4.) These health issues caused Huey to suffer from breathing problems and placed her at a higher risk of serious illness from COVID-19. (*Id.* ¶¶ 4, 6.) Furthermore, Plaintiff asserts that Defendant was aware of Huey's health conditions and their impact on her abilities. She was allowed to park closer to the store because of her breathing problems. (*Id.* ¶ 31.) As such, Plaintiff sufficiently pled that Huey had multiple qualifying disabilities under FEHA. For purposes of this motion, Plaintiff has also sufficiently alleged how these disabilities impacted Huey's major life activities. *See, e.g., Madrigal v. Performance Transp., LLC*, No. 5:21-cv-00021-VKD, 2021 WL 2826704, at *3 (N.D. Cal. July 7, 2021) (holding that the plaintiff pled a qualifying disability by stating he both had diabetes and diabetes put him at a higher risk for serious illness from COVID-19.)

### 2. Essential Functions

FEHA applies to individuals who are able to perform the essential functions of the job. *See* Cal. Gov't Code § 12940(a)(1) ("[t]his part does not prohibit an employer from . . . discharging an employee with a physical . . . disability . . . if the employee, because of [his or her] physical . . . disability, is unable to perform [his or her] essential duties even with reasonable accommodations."). Here, Huey was a Customer Order Specialist at Home Depot, which required her to place large orders for contractors and work as a middleman between customers and vendors. (*Id.* ¶ 34.) There are no contentions that Huey could not perform her job as a result of her disabilities. Rather, Huey could perform her work, which was exclusively done over the phone and computer. (*Id.*) For purposes of this motion, these facts show that Huey was a qualifying individual under FEHA.

### 3. Adverse Employment Action

Adverse employment actions are those "that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement." *Doe v. Dep't of Corr. & Rehab.*, 43 Cal. App. 5th 721, 734 (2019) (citing *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1054 (2005)). If the claim is against a corporation, the "corporation itself must have taken some official action with respect to the employee, such as hiring, firing, failing to promote, adverse job assignment, significant change in compensation or benefits, or official disciplinary action." *Id*. (citing *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 706, 708 (2009)). A court must determine "whether [the] employment action materially affected 'terms and conditions of employment,' with that term being liberally construed in order to afford employees 'appropriate protection against employment discrimination.'" *Achal,* 114 F. Supp. 3d at 797 (citing Cal. Gov't Code §§ 12940(a) and (h); *Yanowitz*, 36 Cal. 4th at 1054). Rejecting an accommodation request is not a qualifying adverse employment action. *Doe*, 43 Cal. App. 5th at 735–36.

Here, Plaintiff argues that Defendant discriminated against Huey based on her disability because her job requirements were not altered after she shared that she was at high risk for COVID-19. However, denial of accommodation requests does not sufficiently show adverse employment action. *See Doe,* 43 Cal. App. 5th at 735–36 ("No court has ever held that a failure to reasonably accommodate an employee's disability – which is a separate cause of action under FEHA [] – can qualify as the adverse action underlying a discrimination or retaliation claim."). The cases cited by Plaintiff do not suggest otherwise. First, in *Davis v. Team Electric Company,* 520 F.3d 1080, 1089 (9th Cir. 2008), the Ninth Circuit explained that in the context of a Title VII claim, assigning more, or more burdensome, work responsibilities is an adverse employment action. In *Asaro v. Sealy Mattress Mfg. Inc,* No. 3:09-cv-00295-ST, 2010 WL 4812809, at *10 (D. Or. Nov. 19, 2010), the district court found that plaintiff was subjected to a significant alteration in job duties to constitute an adverse employment

11

action. Both cases suggest that some alteration of job duties is needed to support a disability discrimination claim. Here, however, such allegations are lacking. Thus, Plaintiff has failed to show that an adverse employment action occurred, and Defendant's Motion to Dismiss Plaintiff's first cause of action for disability discrimination is GRANTED with leave to amend.

### B. Failure to Prevent Disability Discrimination

Plaintiff also alleges a failure to prevent disability discrimination under FEHA. However, a necessary element of a failure to prevent discrimination claim is the discrimination itself. *See Mayes v. Kaiser Found. Hosp.*, 917 F. Supp. 2d 1074, 1079–80 (E.D. Cal. 2013) (citation omitted). If a plaintiff does not adequately plead her disability discrimination claim, then the failure to prevent disability discrimination claim is also not sufficiently pled. *See id*. Both Parties acknowledged in their briefings that the failure to prevent disability discrimination claim depends on the adequacy of the disability discrimination claim. (*See* Mot. at 24; Opp'n at 20–21.) For the reasons stated above, the disability discrimination claim is not sufficiently pled. Accordingly, the Court GRANTS Defendant's Motion to Dismiss the fourth cause of action for failure to prevent disability discrimination claim with leave to amend.

### C. Failure to Provide Reasonable Accommodations

Plaintiff also alleges a failure to provide reasonable accommodations under FEHA. To state a prima facie claim for failure to provide reasonable accommodations, the plaintiff must plead that "(1) the plaintiff has a disability covered by FEHA; (2) the plaintiff is qualified to perform the essential functions of the position; and (3) the employer failed to reasonably accommodate the plaintiff's disability." Achal, 114 F. Supp. 3d at 798 (citing *Scotch v. Art Inst. of Cal.–Orange Cnty., Inc*., 173 Cal. App. 4th 986, 1010 (2009)). A reasonable accommodation is a "modification or adjustment to the workplace that enables a disabled employee to perform the essential functions of the job held or desired." *Id*. at 798–99 (citation omitted). Once aware of an

1  employee's request "the employer has an affirmative duty to reasonably
2  accommodate, which is not extinguished by one effort." *Id.* at 799 (citation omitted).
3  An employer does not have to provide the employee the best accommodation or the
4  accommodation the employee specifically requests to satisfy the need to reasonably
5  accommodate the employee. *Hanson v. Lucky Stores*, 74 Cal. App. 4th 215, 228
6  (1999).

7  As established above, Huey suffered from a disability under FEHA and could
8  perform the essential functions of her job, *supra* §§ III.A.1–2. As for the
9  accommodations sought, Plaintiff alleges that Huey made requests to Larry Snyder,
10 Tawny Gonzales, her direct manager, and the Home Depot Human Resources
11 Department. (Compl. ¶¶ 6, 7.) Huey requested to work remotely as an
12 accommodation and Plaintiff alleges that all of Huey's job duties could be completed
13 at home. (*Id.* ¶¶ 34, 40.) After Huey got sick, she was permitted to work from home
14 and alleges she could complete all of her assigned tasks remotely. (*Id.* ¶ 71.) Prior to
15 her hospitalization, Huey requested that Defendant limit the number of people in her
16 office at a time to prevent the potential spread of COVID-19. (*Id.* ¶ 88.) Plaintiff
17 alleges that none of Huey's requested accommodations were granted.

18 While Defendant instituted a masking and a quarantining policy, Plaintiff
19 alleges that the lack of enforcement of those policies failed to reasonably
20 accommodate Huey's needs due to her disabilities and thus do not compel dismissal
21 at this stage. (*See id.* ¶ 8.) Plaintiff alleges that Defendant allowed an employee to
22 come to work while still symptomatic with COVID-19. (*Id.* ¶ 9.) Plaintiff also alleges
23 even after Defendant was aware of the employee's COVID-19 infection, Huey was still
24 required to train the new employee while she was symptomatic. (*Id.* ¶ 10.) And
25 Plaintiff has alleged facts that show Defendant did not follow or enforce their own
26 masking policies and failed to respond to Huey's request that they enforce their
27 masking guidelines. (*See id.* ¶¶ 42–48.)
28

13

Plaintiff has pled sufficient facts to show there was no ongoing effort to accommodate Huey as required by FEHA and that Defendant did not communicate with Huey about options to accommodate her ongoing needs.  Thus, Defendant's Motion to Dismiss the second cause of action is DENIED.

### D. Failure to Engage in Interactive Process

Plaintiff next alleges Defendant failed to engage in a good faith interactive process as required by FEHA.  To plead a failure to engage in interactive process claim the plaintiff must allege that "(1) the plaintiff has a disability or medical condition that was known to the employer, (2) the plaintiff requested that his employer make a reasonable accommodation for that disability so that he could perform his job duties, (3) the employer failed to participate in a timely, good faith interactive process with the plaintiff, and (4) the employer's failure to engage in a good faith interactive process was a substantial factor in causing the plaintiff's harm." *Lugo v. Performance Transp., LLC*, No. 2:20-cv-00519-DMG-KS, 2020 WL 7034336, at *3 (C.D. Cal. Oct. 5, 2020) (citing *Gelfo v. Lockheed Martin Corp*., 140 Cal. App. 4th 34, 61 (2006)).  As discussed above, Plaintiff sufficiently pled that Huey suffered from a disability and could perform the essential duties of the job.

The plaintiff must allege he or she "tender[ed] a specific request for a necessary accommodation." *King v. United Parcel Serv., Inc*., 152 Cal. App. 4th 426, 443 (2007) (internal quotations omitted).  The employee must also identify a reasonable accommodation that was available at the time the process should have taken place but does not need to identify that accommodation in their pleading.  *Schauf v. Am. Airlines*, No. 1:15-cv-01172-SKO, 2016 WL 3407661, at *6 (E.D. Cal. June 20, 2016) (citing *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 379 (2015)).  Once the request is initiated, the employer has a continuous obligation to engage in an interactive process.  *Swanson v. Morongo Unified Sch. Dist*., 232 Cal. App. 4th 954, 971 (2014) (citation omitted)).  The interactive process "requires communication and good-faith exploration of possible accommodations between employers and

individual employees with the goal of identifying an accommodation that allows the employee to perform the job effectively." *Achal,* 114 F. Supp. 3d at 800 (citation omitted).

Plaintiff alleges that Huey requested a variety of different accommodations for her disabilities, but that management did not discuss possible accommodations with Huey. Moreover, Huey's requests to enforce the masking and quarantine policies, particularly when it came to training a symptomatic employee, were outright ignored. As a result of Defendant's actions, Plaintiff contends that Huey was exposed to COVID-19 in the workplace and ultimately died.

The Court finds that these allegations are sufficient to state a cause of action. Plaintiff has alleged multiple and ongoing communications with multiple Home Depot employees in management and in Human Resources roles. For purposes of this motion, this is sufficient to show Huey requested accommodations and started the interactive process. Therefore, Plaintiff has pled sufficient facts to support the failure to engage in interactive process claim and Defendant's Motion to Dismiss Plaintiff's third cause of action is DENIED.

### IV. Punitive Damages

Defendant also argues that Plaintiff's request for punitive damages should be dismissed. (Mot. at 25.) To receive punitive damages, the plaintiff must prove that the defendant is guilty of oppression, fraud, or malice. Cal. Civ. Code § 3294(a). An employer is only liable for an employee's actions if they had "advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(b). For a corporate employer, the advance knowledge, conscious disregard, authorization, or ratification "must be on the part of an officer, director, or managing agent of the corporation." *Id*. Malice means conduct that is intended by the defendant to cause injury to the plaintiff or despicable conduct that it

is done by the defendant with a willful and conscious disregard for the rights or safety of others. Cal. Civ. Code § 3294(c)(1). Oppression means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard for their rights. Cal. Civ. Code § 3294(c)(2).

Managing agents are employees who "exercise[] substantial discretionary authority over decisions that ultimately determine corporate policy." *White v. Ultramar,* 21 Cal. 4th 563, 573 (1999). To determine whether an employee is a managing agent, the plaintiff must show that employee "exercised substantial discretionary authority over significant aspects of a corporation's business." *Id.* at 577. This is a question of fact determined on a case-by-case basis. *Id*. at 567.

At this stage, Plaintiff has plausibly alleged that Snyder could be a managing agent for purposes of this action. In particular, Plaintiff alleges that Huey made requests directly to Snyder. (Compl. ¶ 38.) Snyder was the store manager for five Home Depot stores at the time of the events. (*Id.*) Snyder's role is similar to the employee at issue in *White v. Ultramar*, 21 Cal. 4th at 577, where the employee was a zone manager for Ultramar and managed eight stores and at least sixty-five employees. *Id.* at 577. The California Supreme Court concluded that the employee exercised substantial discretionary authority over vital aspects of defendant's business, including managing multiple stores on a daily basis. *Id*. As such, Plaintiff here has satisfied the managing agent requirement for Snyder.[4]

Plaintiff has also alleged sufficient facts at this stage to indicate that the managing agent acted with malice for purposes of punitive damages. As discussed above, Plaintiff alleges that Snyder ignored or disregarded Huey's requests for accommodations. Plaintiff alleges that after Huey stated if she got COVID-19 she would die, Snyder still refused her request and did not engage in a process to find a

---

[4] Plaintiff also alleges that Huey made requests to Tawny Gonzales. There are insufficient facts to allege that Gonzalez was a managing agent. Should Plaintiff amend her Complaint, she made include more information about Gonzalez's role.

reasonable accommodation. (*See* Compl. ¶ 40.)  At this stage, Plaintiff has made a sufficient showing of actions that indicate a conscious disregard for Huey's rights and Defendant's Motion to Dismiss the prayer for punitive damages is DENIED.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss (ECF No. 5).  The Motion is GRANTED as to Plaintiff's first, fourth, fifth, and sixth causes of action.  The Motion is DENIED as to Plaintiff's second, third, and seventh causes of action and as to the prayer for punitive damages. Plaintiff is granted leave to amend.  Within 30 days of this Order, Plaintiff shall either file a First Amended Complaint or inform the Court of her intention to proceed on the surviving causes of action.

IT IS SO ORDERED.

Dated:  **September 25, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC6 – Randall23cv00476.mtd